Moncure, P.
delivered the opinion of the court.
This is a supersedeas to a judgment of the Circuit, court of Nelson county. Rosser and Turner brought an action of assumpsit in that court against OliverBeirne, a resident of Monroe county, in West Virginia, who happened at the time to be in Nelson county,, and upon whom the summons in the case was executed in that county. The declaration contained the common counts. The bill of particulars filed therewith, shows that the action was brought to recover a balance claimed to be due for the construction of a road, leading from the Sweet to the White Sulphur springs. The defendant pleaded in abatement, “that at the-time of and before the institution of the suit, and at' this time (to wit, the time of filing the plea) he neither was, nor is, a resident of Nelson county, nor of Virginia; but was and is an inhabitant of, and resides in Monroe county, West Virginia; that he has no land, estate or debts within the county of Nelson aforesaid, subject to the claim of the said plaintiffs; and that'the cause of action for which said suit was brought, or any part thereof, did not originate in the said county of *539 Nelson, Virginia, but in tbe county of Monroe, West Virginia, aforesaid.” To this plea tbe plaintiffs filed a demurrer, in which the defendant joined. The de murrer was sustained. The defendant afterwards pleaded non assumpsit; to which the plaintiffs replied generally. On the trial of the issue thus made up, the jury found a verdict for the plaintiffs, and assessed their damages at $2,378.39, with legal interest thereon from the 1st day of January 1867; and judgment was rendered accordingly. On the trial of the cause the defendant excepted to an opinion of the court then given, and tendered his bill of exceptions, which was signed and sealed by the court, and made a part of the record.
It appears from the said bill, that on the trial, one of the plaintiffs (Fayette Eosser), being introduced for the plaintiffs, was shown a paper in the following words and figures, to wit:
“Mr. Beirne,
Dear Sir: I am willing to make your road from the Sweet springs to the White Sulphur, 19 feet wide, except in difficult places, say 18 feet; and to be paid for thorough grading 60 cents for rock, and 29 cents for dirt, per cubic yard, and the prices for thorough embankments that are given for thorough cutting; $2.88 per perch for bridge masonry, rubble work, and the same price for culverts; the superstructure of the bridges at cost. In changing Cove creek channel, in order to save bridging, 60 cents for rock and 30 cents for dirt. I am willing to construct the road at the above-prices, complying with the specifications, and complete it within 12 months from the time of contract for the sum of $850 per mile. I shall expect to be: *540 paid every month for the amount of work done—the ten per cent, reserved on the monthly payments.
Respeetfully,
May 8, ’60.
ThOS. BoSSER.
The bridges and culverts are not included in the mile:”
and testified that the same was in the handwriting of his father, Thos. Eosser; and being asked if the defendant replied to said letter, answered that “he did;” and was proceeding to state the contents of the letter of the defendant in reply; to which the defendant by counsel objected; and the witness being asked what had become of the said reply, said that it had been lost; that he, the witness, had possession of it, and he placed it, with other papers, in the hands of a lawyer in Union, Monroe county, West Virginia; that ■after the witness returned to Virginia, he wrote to his lawyer to send him his papers by express, which the lawyer did; writing to him at the same time that he had sent him all of his papers that were in his hands; but the letter and other papers that he had put into the hands of his said lawyer, were not in the package of papers so sent him by express; and being asked if he ever afterwards applied to his lawyer for the said O. Beirne’s letter, said that he had not. And being further asked, why he did not do so, said that he did not think it worth while to apply again, as the lawyer had written to him that he had sent him all of the papers he had in his possession belonging to the witness; nor had he ever informed the lawyer that he had failed to send said reply. And thereupon defendant’s counsel objected to the witness stating the contents of the .-said letter of the defendant, on the ground that no *541 proper foundation had been laid for giving secondary evidence of the contents of the said letter. But the court overruled the said objection, and allowed the witness to testify as to its contents; to which ruling of the court the defendant excepted as aforesaid.
To the judgment aforesaid the defendant applied to a judge of this court for a supersedeas, which was awarded accordingly. The only errors assigned in the petition are: 1st, that the court sustained the demurrer of the plaintiffs to the defendant’s plea in abatement to the jurisdiction of the court; and, 2ndly, that the court erred in admitting upon the trial, parol evidence of the contents of the alleged letter of the petitioner.
As to the first error assigned, to-wit: in sustaining the demurrer to the plea in abatement; the court is of' opinion that the Circuit court did not err in sustaining the said demurrer.
All actions are either local or transitory. Real and mixed actions are local, and personal actions are transitory. This is a personal action; being for the recovery of damages for the breach of a contract; and is,, therefore, a transitory action. It is a general principle of the common law, that a transitory action can be brought against a party wherever he may be found and served with process; no matter where he may reside, or where the cause of action may have arisen. See Story on the conflict of laws, 538; and 1 Rob. Pr., new edition, pp. 316, 353, 354, 356 and 357, and the authorities there cited. This general principle is modified by statute, which has created various exceptions to it. Most of them will appear by reference to 1 Rob. Pr., new edition, pp. 357 and 358; Code p. 1082, ch. 165; p. 1083, ch. 166; and p. 1088, ch. 167. But this case comes within the general principle and not *542 within any of the exceptions: It is a case in which n° court in the state has jurisdiction, except that in which it was brought, whose process was executed upon the defendant within the county over which it has jurisdiction; and that court has jurisdiction becauge^ anq on]y because, the defendant was found and served with process within the county. That fact gave that court jurisdiction, according to the general principle of the common law before referred to. The plea in abatement did not give to the plaintiff a better writ; did not show what court in the state had jurisdiction of the case; which was necessary to make the plea a good one. If the defendant be within the state, so as to be served with process thereon, there must be a remedy against him in some court in the state; and if in no other, in the courts of the county in which he may be found and be served with process. The plea in this ease was therefore not a good one, and the demurrer to it was properly sustained.
As to the second error assigned; that the Circuit court erred in admitting upon the trial parol evidence of the alleged letter of the appellant.
The first question presented by this assignment of error is, whether a sufficient foundation was laid to authorize the introduction of parol or secondary evidence of the contents of the letter? Was the loss of the letter sufficiently proved, or was a sufficient excuse shown for not producing it on the trial ?
Fayette Rosser, one of the plaintiffs, on his examination as a witness in the case, testified that the letter had been lost. If his testimony had stopped there, he would have proved the loss of the letter, which would have been sufficient to let in secondary evidence of the contents of the letter. But he did not stop there. 'The witness proceeded to explain how the letter was *543 lost: “ that he, the witness, had possession of it, and placed it with other papers, in the hands of a lawyer in Union, Monroe county, West Virginia; that after the witness returned to Virginia, he wrote to his lawyer to send him his papers by express, which the lawyer did, writing to him at the same time, that he_ had sent him all his papers that were in his hands; but the letter and other papers that he had put in the hands of his said lawyer were not in the package of papers so sent him by express.” And being asked if he ever afterwards applied to his lawyer for the letter said, “that he had not;” and being further asked, why he did not do so, said, “ that he did not think it worth while to apply again, as the lawyer had written to him that he had sent him all of the papers he had in his possession belonging to the witness; nor had he ever informed the lawyer that he had failed to send said reply.” Was a sufficient foundation thus laid for the introduction of secondary evidence of the contents of the letter?
The letter was proved to have been out of the state; and “the question has occasionally arisen,” as is said in a note (446) to 2 Phillips on Evidence, Cowen & Hills and Edwards’ notes, edition of 1868, page 484, 41 whether proof that a paper is out of the state, will, of itself, be sufficient to lay the foundation for introducing secondary evidence of its contents without further evidence showing an effort to obtain it. In Connecticut it has been held that it would not. Townsend v. Atwaler, 5 Day’s R. 298, 306. So also in Louisiana, Lewis v. Beatty, 8 Martin, U. S. 150. Otherwise, however, in Kentucky; and the court liken it to the case of a subscribing witness absent from the state. Boone v. Dyke’s legatees, 3 Monr. R. 530. See also Eaton v. Campbell, 7 Pick. R. 10.” In this case there was fur *544 ther evidence, showing an effort to obtain the letter. After the witness returned to Virginia, he wrote to-his lawyer living in "West Virginia, in whose hands he had placed the said letters with other papers, requesting him to send him his papers by express; which the jawyer writing to him at the same time that he had sent him all of his papers that were in his hands; but the letter and other papers that he had put in his. hands were not in the package of papers so sent him by express. The witness further said, in answer to-questions propounded to him, that he never afterwards applied to his lawyer for the letter, that he did not think it worth while to do so, as the lawyer had written to him that he had sent him all of the papers he-had in his possession belonging to the witness; nor had he ever informed the lawyer that he had failed to send said- letter.
blow was this evidence that the letter was out of the state, taken in connection with the effort which was used by the plaintiffs to obtain it, a sufficient foundation for the introduction of parol or secondary evidence of its contents?
The Circuit court was of that opinion, and so decided. Will this court say that the decision was erroneous, and on that ground reverse the judgment?
The point thus decided was a preliminary and incidental one, addressed solely to the court, and not affecting the issue to be tried by the jury; and parties and persons interested are recognized as competent witnesses in respect to the facts and circumstances necessary to lay a foundation for secondary evidence. 1 Phil. on Ev., supra, p. 436, note 446, and cases therein cited. “Secondary evidence,” as is said in note 473 to that work, page 469, “ is not admissible, if by reasonable diligence the original could have been *545 produced; but the degree of diligence will depend on the nature of the transaction to which the paper relates, the apparent value of the paper, and other circumstances.”—“The rigor of the old common law rule has been relaxed in this respect; and the non-production of instruments is now excused for reasons more general and less specific, upon grounds more broad and liberal than were formerly admitted. In general, the party should give all the evidence reasonably in his power to prove the loss. He is not bound, however, to furnish the strongest possible assurance of the fact. If any suspicion hangs over the instrument, or that it is designedly withheld, a rigid enquiry should be made into the reasons of its non-production. But where there is no such suspicion, all that ought to be required is reasonable diligence to obtain the original.
In practice, when there is no ground of suspicion that the paper is intentionally suppressed, nor any discernible motive for deception, courts are extremely liberal in regard to secondary evidence.” After making the above, and other remarks on the subject, and referring to cases to sustain them, the writer of the note thus concludes: “From the. foregoing observations, extracted from several cases, it will be seen that but very few propositions of a general character can be safely advanced on this subject. The sufficiency of the proof given, by way of allowing a resort to secondary evidence, is, in general, a preliminary point addressed to, and to be determined by the court exclusively, and upon which they are to pass in view of the peculiar features which may chance to characterize each case as it arises.” The record in this case discloses no ground for suspicion that the letter was intentionally suppressed, • nor any discernible motive for deception on the part of the plaintiffs.
*546 We cannot therefore say that the decision of the Circuit court on this preliminary point is erroneous, and that on that ground the judgment ought to be reversed.
But even if we could say that such decision is erroneous, can we say that it sufficiently appears from the record that the defendant was injured by such error?
In order to reverse a judgment of the court below, it ought to appear to the appellate court not only that there is error in the judgment, but that such error injured the party who complains of it.
Can we say that the error complained of in this case, if there be such error, injured the party who complains of it?
The bill of exceptions states, that the court overruled the objection to the witness stating the contents of the letter, and allowed him to testify as to such contents. If it can be inferred from the record that such contents were stated by the witness, certainly none of them are set out in the bill of exceptions, and we cannot therefore say that the defendant was injured by the testimony. The letter may have had no' relation whatever to the case, or none that was at all material, or may have been rather in support of the plaintiff’s than the defendant’s side of the case. If the defendant was injured by the admission of the testimony, ought he not to have shown the fact by setting out the testimony in his bill of exceptions ?
In Nailor v. Williams, 8 Wall. U. S. R. 107, decided by the Supreme court of the United States in 1868, it was held, that where a question is asked of a witness, which is illegal only because it may elicit improper testimony, and the court permits it to be answered, against the objection of the other party; if the witness knows nothing of the matter to which he is interro *547 gated, or if his answer is favorable to the objecting party, it is not error of which a revising court can take notice. It works him no injury. If it does work the objecting party injury, he can show it by making the answer a part of the bill of exceptions, and unless he does this, there is no error of the sort mentioned.
In Johnson’s ex’or v. Jennings’ adm’r, 10 Gratt. 1, decided by this court in 1858, a question was propounded to a witness, which was objected to; but the objection was overruled, and an exception was taken. The exception did not state the answer of the witness, nor that he answered the question. The answer might have been of no importance, or of no injury to the exceptant. This court would not reverse the judgment on that alleged ground of error.
In Stoneman’s case, 25 Gratt. 887, decided by this court in 1874, an objection to a question asked and to the witnesses answering it, was overruled, and an exception taken, which did not state the answer. This court held, that an appellate court could not consider the question intended to be raised by the exception. That case was a prosecution for murder. In answer to a question of the attorney for the commonwealth, a witness said that she had received a message from the deceased. The attorney then asked her to state what the message was. To which question and the witness answering the same the prisoner objected; but the court overruled the objection, and directed the witness to answer. The bill of exceptions, however, did not state whether in fact the witness answered the question or not. In delivering the opinion of the court, Judge Staples said, on this branch of the case: “ It may be that she (the witness) was unable to remember or repeat the message. And if she remembered and *548 repeated it, we have no means of knowing what it was. message may have related to some matter having connection with the homicide. It may have been so entirely immaterial as to produce no connection impression on the mind of the jury. The bill of exceptions ought to have contained the answer of the witness, that this court may see whether it is material, and possibly may have affected the finding of the jury. The omission renders it impossible for us to consider the question raised by this bill of exceptions.”
According to the principle of the foregoing cases, we are of opinion that the bill of exceptions, if it shows any error at all, shows none to the injury of the plaintiff in error. It may be said in this case, according to what was said by the court in Stoneman’s case: it may be that the witness was unable to remember or repeat the contents of the letter; and if he remembered and repeated them, we have no means of knowing what they were. They may have related to some matter having no connection with the matter in issue; or may have been so entirely immaterial as to produce no impression on the mind of the jury. The bill of exceptions ought to have contained the testimony of the witness as to the contents of the letter, that this court might see whether it was material and possibly may have affected the finding of the jury.
Upon the whole, we are of the opinion that there is no error in the judgment of the Circuit court, and that the same ought to be affirmed.
Staples, J. was of opinion that a proper foundation was not laid for the introduction of parol proof of the contents of the letter. Upon the other points he concurred with the other judges.
Judgment aeeirmed.