# CHARLESTON.

## WITTEN *v.* ST. CLAIR.

Submitted January 30, 1886.—Decided February 25, 1886.

1. In actions at law affecting lands or other immovable property the forum *rei sitæ* has exclusive jurisdiction; and the judgment of such forum as to such property is conclusive. (p. 764.)

2. In an action of ejectment to recover land situate in this State, if the defendant be a non-resident, he may be proceeded against by order of publication, or the declaration and notice may be served upon him outside of the State in the manner prescribed by sec. 13, ch. 124 of the Code, and either mode of service will confer jurisdiction upon the forum *rei sitæ* to determine the ownership of the land in controversy. (p. 764.)

3. If in such action the plaintiff files with his declaration a statement of the profits or damages which he means to demand, and thereafter the defendant appears and pleads not guilty to the action, the court will then have jurisdiction not only to determine the ownership of the land but also to render a personal judgment against the defendant for the profits of, or damage done by him to, the land. (p. 767.)

4. Such statement claiming profits or damages may be filed after the declaration has been filed and before trial; but, if not filed at the commencement of the action, the trial-court ought not to permit the same to be thereafter filed when doing so might operate as a surprise or fraud upon the defendant. (p. 767.)

5. When the defendant has been proceeded against as a non-resident and has appeared and pleaded to the action before such statement has been filed with the declaration, the trial-court should not thereafter permit the plaintiff to file such statement without the consent of the defendant. (p. 767.)

6. In an action of ejectment for land, in which neither the plaintiff nor the defendant claim under a good paper-title, and it is not shown that the title has ever been granted by the State or the Commonwealth of Virginia to any one, it is error to instruct the jury, that the plaintiff may recover without tracing his title to a grant from the State or Commonwealth. The instruction should require the jury to find, that the plaintiff had in such case been in the actual possession of the land for the time prescribed, and had paid all the State taxes required, by sec. 3 of Art. XIII. of our Constitution.   (p. 769.)

7. The action of ejectment in this State is not simply a comparison of titles. The general rule is, that the right of the plaintiff to recover rests upon the sufficiency of his own title and not only upon the weakness of that of the defendant.   (p. 770.)

8. This general rule is subject to important qualifications: Thus, when a party in peaceable possession of land is entered upon and ousted by a mere intruder or trespasser, who has no title or color of title to or authority to enter upon the land, the party so ousted may recover the premises in ejectment upon his possession merely; and his right to do so can not be defeated by such intruder showing that there is or may be an outstanding title in a third person.   (p. 771.)

*Watts & Camden* for plaintiff in error.

*Henry & Graham* for defendant in error.

SNYDER, JUDGE:

Action of ejectment brought in the circuit court of Mercer county by William H. Witten against Alexander St. Clair to recover a described boundary of about 400 acres of land lying in said county.   There was a trial by jury and a verdict found in favor of the defendant for said land and also for $243.50 damages, upon which the court, on November 16, 1883, entered judgment.   The defendant moved the court to set aside the verdict and took two bills of exceptions during the trial; and to reverse the judgment he brought this writ of error.

The first error complained of is the refusal of the court to quash the declaration and return for the want of jurisdiction to try the action.   The record shows that the defendant is and was before and at the commencement of the action a resident of Tazewell county in the State of Virginia, and that the declaration and notice were served upon him in

Tazewell county. The return of the service was by agreement of the parties amended so as to make it conform to the requirements of sec. 13, chap. 124 of Code. The defendant then appeared for the purpose of moving to quash the amended return and for that purpose only, and having made said motion the court overruled the same. He then tendered his plea in abatement alleging therein, that he is a non-resident of this State, and that he was before and at the time of the service of the declaration and notice a resident of Tazewell county in the State of Virginia, and that service was made upon him in said county and State on April 10, 1882. The plaintiff objected to the filing of this plea and the court sustained the objection and rejected the plea. The defendant insists that both the return and the facts alleged in the plea show, that the circuit court had not jurisdiction to try this action. Waiving any and all objections to the form of the defendant's plea, we will proceed to consider the question presented upon its merits.

All the land in controversy in the action is situated in Mercer county this State and the circuit court of said county is a court of general jurisdiction. Land is immovable property, and the universal law of nations is, that the *forum rei sitæ* in actions at law is the only jurisdiction in which the right or title to immovables can be determined, and the judgment of such forum is absolutely conclusive in such cases. Story's Conflt. of Laws, secs. 551, 555, 591 ; *Rafael* v. *Ferelst,* 2 W. Bl. 1058.

There can be no question therefore that the circuit court of Mercer county had jurisdiction of the subject matter, the land in controversy in this action. Had it by the proceedings adopted, also jurisdiction as to the defendant ? As to the service of process in actions of ejectment, our statute provides, that the declaration and notice may be served in the same manner as other notices may by law be served, and if the defendant be a non-resident of the State such service may be made by order of publication as provided by law in other cases. Sec. 11, ch. 110, Acts 1877, p. 160. Sec. 13, ch. 124 of Code, declares, that personal service made outside of this State on non-resident defendants in the manner the service was made in this action "shall have the same effect, and no other, as an

order of publication, duly posted and published against them." In my judgment this latter statute was intended simply to give the plaintiff the option to have the order of publication made in the manner provided by the preceding sections of said ch. 124 or according to the provisions of said sec. 13 of said chapter. The latter is intended simply as a substitute for the former, and whether the service is in one form or the other, it will be regarded as a service by order of publication within the meaning and intent of said section 11 of ch. 110, Acts 1877. I think, therefore, the personal service made on the defendant in Tazewell county, in the State of Virginia, was sufficient to confer jurisdiction upon the circuit court of Mercer county to try this action as to said defendant, and that the said court did not err in refusing to quash the return or in rejecting the plea in abatement.

After the court refused to quash the return or entertain the plea to its jurisdiction, the defendant appeared to the action and pleaded not guilty on which plea issue was joined. At a subsequent term and after the jury had been sworn and the trial was in progress, the defendant objected to evidence offered by the plaintiff to prove the damages done to the land by the destruction and cutting of timber thereon and moved to quash the notice given to defendant by the plaintiff of his intention to claim damages, and the court overruled said objection and motion, refused to quash said notice and permitted said evidence to go to the jury. It is insisted here, that this action of the court was erroneous.

The bill of exceptions states that said notice is in the record, but the only notice to be found in the transcript before us, is the one attached to the declaration which is in the usual form and does not assert any specific claim for damages. The clerk certifies that the transcript here "is a true and correct transcript of the record and proceedings in the case," so we must infer that the notice appended to the declaration is the notice referred to in the bill of exceptions. Still as such may possibly not be the fact, and as the case must be remanded for a new trial for reasons hereafter stated, I will here state what I regard the requirements of our statute in such cases, in order that any misapprehension may be avoided at any future trial of the action.

The statute provides: "If the plaintiff file with his declaration *a statement* of the profits or other *damages* he means to demand, and the jury find in his favor, they shall at the same time, unless the court otherwise order, assess the damages for mesne profits of the land for any period not exceeding five years previously to the commencement of the suit until the verdict, and also the *damages* for any destruction or waste of the buildings or other property during the same time, for which the defendant is chargeable." Sec. 30, ch. 90 Code.

Under this statute, if the plaintiff intends to claim damages for the destruction of timber or other injury to the land in controversy or for mesne profits, he must file with his declaration a statement showing the specific grounds, upon which he bases his claim, and the true nature thereof, so as to give the defendant reasonable notice of the extent and character of his claim. It is not sufficient, that the declaration in general terms asserts a claim for damages. The statement may be made a part of the declaration or of the notice appended thereto, but it is not necessary that it should be so, nor that it should be served upon the defendant as a part of the declaration or notice. It may be filed at the time the declaration is filed or afterwards before the appearance of the defendant and before the trial. Whether it may be filed after the defendant has appeared and pleaded to the action, is a matter which should be in the discretion of the trial-court to be reasonably exercised by it so as to avoid surprise or injustice to the defendant. The plain object of the statute, being to avoid the expense and trouble of a separate action for damages between the same parties in regard to the same subject of controversy, it merges the two causes of action into one, and when the court does not, as it may under the statute, order them to be tried separately, they must be treated and tried as one action. *Goodwyn* v. *Myers*, 16 Gratt. 336. It does not seem to me, therefore, that any notice to the defendant of the filing of such statement is required by either the statute or the general rules of practice. It is certain that no such notice is required if the statement is filed with the declaration at the commencement of the action.

But inasmuch as the action of ejectment in such cases as

the one at bar includes not only the right to recover the land, the immovable subject, but also the right to recover damages for injury to the land, which latter is a mere personal right, the court may acquire jurisdiction to try the former without also doing so as to the latter. The *forum rei sitæ* has the exclusive jurisdiction as to the former, while the latter is transitory and personal and no jurisdiction can be acquired over it without an attachment or personal service or its equivalent upon the defendant. *Bierne* v. *Rosser*, 26 Gratt. 537. Of course if the defendant appears and pleads generally to the action, then a personal judgment may be rendered against him by any court of general jurisdiction in which the action may be brought. *Harvey* v. *Shipwith*, 16 Gratt. 410. But if he fails to do so, and there has been no personal service upon him, no such judgment can be rendered against him. It, therefore, follows that, while in this action the plaintiff, by service of process upon the defendant outside of the State or by order of publication, was entitled to an absolute and conclusive judgment against the defendant as to the land, whether the defendant appeared and pleaded to the action or not, it is clear, that he was not entitled to a judgment for damages done to the land without such appearance by the defendant. In this action it does appear, that the defendant appeared and pleaded generally to the action, but it does not appear, whether he so pleaded before or after the claim for damages was filed by the plaintiff. If he pleaded after such claim had been filed, then his appearance should be regarded and treated as an appearance to the whole action including the claim for damages, and in such case the court had jurisdiction to render judgment not only for the land but for the damages also. But if at the time the defendant pleaded to the action no claim or statement demanding damages had been filed, his appearance could not properly be considered as an appearance to an action which included such claim. It, therefore, seems to me, that, if the defendant pleads to the action before such statement is filed, the court should not thereafter without the consent of the defendant permit such statement or claim for damages to be filed in the action, but should leave the plaintiff to his separate action in the proper forum to recover such damages. To permit the

plaintiff to assert such claim against the defendant after he had thus pleaded would be to compel him to litigate a matter not necessarily a part of the action, to which he had appeared and in a forum in which he could not have been sued for such damages. This might operate not only as a surprise but as a fraud upon the rights of the defendant.

These views will, I think, sufficiently indicate our construction of the statute so as to meet any phase of the facts already in this case, or which may be brought into it upon a future trial.

The next enquiry is as to the instructions given and refused by the court. Neither the plaintiff nor the defendant shows any grant for the land in controversy. The origin of the plaintiff's paper-title is a deed to him from his father dated September 25, 1852, for the land in dispute. And he offered testimony tending to prove that his father had been in the actual possession of and lived upon a part of said land for many years before the date of said deed; that at the time said deed was made his father put him in possession of the whole of the land; and that he has lived upon and used and cultivated parts of it ever since, and is still living upon it; that he had paid the taxes on all said land; that shortly before the institution of this action railroad ties were cut and carried from said land by authority of the defendant, and that defendant got the pay for said ties.

· The defendant claims the land under a deed dated October 13, 1877, made to him by R. T. Bowen and others for 1,357 acres of land described as lying in Tazewell county, Virginia. The paper-title of the defendant's grantors is traced to a will made by Thomas Peery dated February 25, 1859, and no further. The testimony shows, that the defendant and those under whom he claims have for many years been in the actual possession of portions of the said tract of 1,357 acres, which covers a part of the land in controversy; but the evidence is not clear as to whether either the defendant or any of his grantors have ever had actual possession of any portion of the land covered by the plaintiff's deed. It was proved that the defendant had not, since 1875, been charged with taxes for any lands on the assessor's books of Mercer county.

The court at the instance of the plaintiff gave the jury five

several instructions, to each of which the defendant objected and excepted. The defendant requested five separate instructions, to all of which the plaintiff objected. The court refused to give the first, second and third of said instructions, but gave the fourth and fifth as asked and also the third with a modification by the court. To the refusal of the court to give all of said instructions as asked the defendant duly excepted.

The plaintiff's first instruction which the court gave to the jury is as follows:

"The court instructs the jury that it is not absolutely necessary for the plaintiff to trace his title from the State or Commonwealth in order to recover in this case; but if the jury believe from the evidence in this case, that the plaintiff has a good title to the land in controversy, and the same is better, prior and paramount to the defendant's title, and the plaintiff was entitled to the possession thereof at the commencement of this suit, they should find for the plaintiff."

This instruction is manifestly erroneous in, at least, two essential matters: *First.* It states as a legal proposition, that it is not necessary for the plaintiff to trace his title from the State or the Commonwealth of Virginia; and *Second*, that it is sufficient to entitle the plaintiff to recover that he has a better, prior and paramount title to that of the defendant. Neither of these propositions, without important and material qualifications, is the law of this State.

1. Prior to the Code of 1849, it was always essential in the State of Virginia to show, that the land had been granted to some one, because the statute of limitations did not run against the State, and therefore no time however protracted could divest her title to the land and transfer it to an adverse claimant. *Levasser* v. *Washburn*, 11 Gratt. 572; *Nimmo* v. *Commonwealth*, 4 H. & M. 57.

The law in this State on this subject is defined by sec. 3, Art. XIII. of our Constitution. The substance of said section is, that the title to all waste and unappropriated lands and all lands vested in the State by forfeiture or otherwise shall be transferred to and vested in three classes of owners or claimants in the following order: *First.* Such

persons as shall have had actual continuous possession of
such land under a color or claim of title for ten years *and
shall have paid the State taxes thereon* for any five years during
such possession; *Second.* If there be none such, then such
persons as shall have title or claim thereto regularly derived
from the Commonwealth of Virginia or this State, not for-
feited, which but for the title forfeited would be valid and
who *have paid all State taxes charged or chargeable thereon* for
five successive years since 1865; and *Third.* If there be no
such persons, then to any such persons as shall have had
claim to and actual continuous possession of the land under
color of title for any five successive years since 1865, *and
shall have paid all State taxes charged or chargeable thereon* for
said period. See also sec. 1, ch. 105 Amd. Code.

It will be observed, that the instruction now under con-
sideration wholly omits the essential element of the payment
of the taxes on the land. This is made by the Constitution
a condition precedent to the right of any claimant of any of the
three classes of persons mentioned to acquire the title of the
State to lands. Whether the plaintiff had paid the taxes on
the land was a question for the jury, and the instructions
should have submitted that question to them.

2. The action of ejectment is not in this State, at least, simply
a comparison of titles. The general rule, that the right of the
plaintiff to recover in this action rests upon the sufficiency
of his own title and not upon the insufficiency of that of the
defendant, is too well settled to leave any room for discus-
sion. The revisers in reporting the Code of Virginia in
1849, added to sec. 10, ch. 135 of said Code these words:
"When the plaintiff shows a better title in himself than that
of the defendant, the latter shall not be allowed to defeat the
action by showing an older title than that of the plaintiff in
a third party, under whom the defendant does not claim,
and with whom he has no privity in law or equity." The
Legislatue refused to make these words a part of the statute,
and thus plainly indicated, that it did not intend, such
should be the law of that State. Upon the formation of
this State said statute became a part of its laws and has so
continued to this time. Accordingly in order to enable the
plaintiff to sustain this action it is essential that he be clothed

with the legal title and the right of possession at the time the action is instituted. The plaintiff must always in the first instance make out a legal and possessory title to the premises in controversy, and the defendant's evidence may be confined to the falsifying his adversary's proofs, or rebut-. ting the presumptions which may arise from them. He need not offer any evidence of title in himself or of a third person. It is sufficient, if he makes it appear to the jury that the legal and possessory title does not subsist in the plaintiff; because, as before stated, the general rule is, that the plaintiff must recover, if at all, on the strength of his own title, and can not do so by reason of the weakness of the title of the defendant. The possession gives the defendant a right against every person who can not show a good title. *Haldane* v. *Harvey*, 4 Burr. R. 2484; *Wilson* v. *Inloes*, 11 Gill. & Johns. 551.

This general rule is, however, subject to important qualifications. As where the defendant has entered under the title of the plaintiff and in subordination thereto, as tenant, trustee, co-parcener or licencee, he can not set up title in a third person in opposition to that of the plaintiff, under which he entered. In such cases the plaintiff may recover without exhibiting title, but simply by showing that the relation between him and the defendant is such, that the latter can not question his right. Likewise, when a party in peaceable possession of land is entered upon and ousted by one not having title to, or authority to enter upon, the land, the party so ousted may recover the premises in ejectment upon his possession merely; and his right to do so can not be defeated by the defendant showing that there is or may be an outstanding title in a third person, but only by showing that the defendant himself either has title or authority from the person having the title to enter under the title. *Tapscott* v. *Cobbs*, 11 Gratt. 182; *Middleton* v. *Johns*, 4 Gratt. 129; *Moody* v. *McKein*, 5 Munf. 374.

But in such case, if it appear from the evidence, that the defendant entered and claims under a title or color of title adverse to that of the plaintiff, or that the land was vacant when the defendant came into the possession of it peaceably and quietly without any privity between him and the plaintiff,

or those under whom he claims, the plaintiff can not recover upon the ground of prior possession without showing title and a right to the possession. *Moody* v. *McKein, supra*; Tyler on Eject. 784, 204, 70.

The evidence in this action shows that the defendant entered under color of title and claim to the land. His position is not that of a mere trespasser or intruder. Whether he is in fact such is the very question in issue to be tried by the jury. The portion of the instruction now in question assumed this important fact against the defendant and by this assumption the court invaded the province of the jury. The instruction is also erroneous because it assumes that there may be two or more titles to the same land, and that the one which may be better, prior and paramount to the others of these several titles must prevail. This is not the law of this State. There can in the nature of things be but one title to land, and to entitle the plaintiff to recover against an adverse claim of title and possession he must show, that he has that title and the right to the possession of the land. *Adams* v. *Alkire*, 20 W. Va. 480.

All the other instructions requested by the plaintiff and given to the jury by the court are more or less infected with the errors which we have pointed out in said first instruction. Some of these others may not be objectionable as abstract legal propositions, but none of them are sound law as applied to the evidence in this action. They all have reference to the doctrine of adverse possession. That doctrine has been so often considered and defined by this Court and the court of appeals of Virginia, that I do not deem it necessary to do more in this case than to refer to some of the decisions on that subject. *Core* v. *Faupel*, 24 W. Va. 238; *Garrett* v. *Ramsey*, 25 W. Va. 345 ; *Taylor* v. *Burnsides*, 1 Gratt. 165; *Overton* v. *Davisson*, Gratt. 211; *Kincheloe* v. *Tracewell*, 11 Gratt. 587; *Shanks* v. *Lancaster*, 5 Gratt. 110

For the reasons and according to the principles hereinbefore announced, there was no error in the action of the court refusing to give the instructions of the defendant which the court rejected. But for the errors, which I have before indicated, the judgment of the circuit court must be reversed, the verdict of the jury set aside, and the action remanded to

the said court for a new trial in accordance with the principles announced in this opinion.

REVERSED.    REMANDED.