## CHARLESTON.

### McCann's Adm'r v. Righter.

*(Holt, Judge, absent.)

Submitted June 21, 1890.—Decided November 28, 1890.

Ejectment—Mesne Profits—Judgment.

> In an action of ejectment, after the plea of not guilty is filed, the plaintiff files in the suit an account for rents and profits under the statute, and, after the suit had been pending for a number of years, an agreement was entered into between the plaintiff and defendant, whereby said defendant agreed to let judgment go by default in said suit, and the plaintiff agreed to waive all claim to damages sustained by destruction of dwelling-house, timber etc., and the defendant agreed to pay the plaintiff all legal costs and legal rents in said suit, said action of ejectment remained pending on the docket for several years subsequent to the date of said agreement and was dismissed under the four-years rule, the rents

*Case was submited before Judge Holt's appointment.

claimed in the account filed as aforesaid not having been ascertained in said action. In an action of covenant brought on said agreement by the plaintiff in said action of ejectment to recover from the defendant such rents and costs, *held*, that the plaintiff in said action of ejectment having failed to have the legal rents of the land in controversy assessed in said action of ejectment in either of the modes prescribed by statute could not recover the legal rents contracted for in said agreement, in said action of covenant.

*O. Johnson* and *E. Maxwell* for plaintiff in error.

*O. Johnson* cited :

4 Am. & Eng. Law 467, 469, 491, 493 ; 3 Johns. 44 ; 5 Munf. 483.

*E. Maxwell* cited 27 W. Va. 465.

*J. Bassell* for defendant in error cited :

Tyl. Eject. Mesne Profits ; Code c. 90 s. 37 ; 4 Gratt. 16, 23, 24.

English, Judge :

The questions raised by this writ of error were argued and submitted at the January term of this Court, 1890, and at the spring special term for reasons then stated the cause was reversed and remanded for further proceedings to be had therein. The defendant in error, however, presented a petition praying a rehearing thereof, which was allowed, and the case was reheard and again submitted at the June term, 1890. The questions presented for our consideration originate from the proceedings taken in a certain action of ejectment, which was instituted on the 27th day of May, 1848, in the Circuit Court of Harrison county, by James, Thomas, John, Sarah and Wilson B. McCann, and Jonathan, James M. and John Golden, to recover from Cyrus Ross the possession of a tract of land containing fifty acres situated in Harrison county, in the locality therein described, to which action said Cyrus Ross appeared on the 30th day of May, 1849, and pleaded not guilty. Said cause remained upon the docket of the Circuit Court of said county until the 5th day of December, 1866, when it was removed to the Circuit Court of Taylor county, where it

was docketed on the 23d day of February, 1867. On the 25th day of September, 1872, the death of the defendant, Ross, was suggested, and the cause was revived against Sarah Ross, widow, and John Ross, and about twenty others named as heirs at law of Cyrus Ross, deceased. It further appears that said cause remained pending in the Circuit Court of Taylor county until the 1st day of March, 1878, when the same was stricken from the docket, under the four-years rule. During the pendency of said action in the Circuit Court of Taylor county, towit, on the 1st day of October, 1870, the plaintiffs by their attorneys filed a written notice or statement of profits and damages claimed by them from the defendants, in the words and figures following, towit:

"*James McCann & others* v. *Cyrus Ross*, action of ejectment pending in the Circuit Court of Taylor county, West Virginia. The defendant in the above named action is hereby notified, that the plaintiffs therein will at the trial thereof demand against the said defendant profits derived by him from the land in the declaration mentioned in said action, and other damages done by him to said land while in possession wrongfully and against the said plaintiffs, from five years before the commencement of said action until verdict shall be rendered in said action for the plaintiffs in said action; and the plaintiffs herewith file with the declaration in said action a statement of said profits and damages, which statement is as follows, towit: For profits of said land at the rate of seventy five dollars *per annum* from the 1st day of April, 1846, till the commencement of said action, and at the same rate *per annum* on, until verdict shall be rendered in said action for the use of said land, seventy five dollars *per annum* during the same period." Signed by plaintiffs' attorneys.

On the 9th day of December, 1872, said Sarah Ross and James McCann entered into an agreement in writing, under seal, in the words and figures following, towit:

"An article of agreement made and entered into between Sarah Ross, widow, and heir at law of Cyrus Ross, deceased, and James McCann. The said Sarah Ross agrees and binds herself to let judgment go by default in a certain

suit now pending in the Circuit Court of Taylor county, West Virginia, for a certain tract or parcel of land lying on the waters of Booth's creek, Harrison county, West Va., adjoining the lands of James McCann and Cyrus Ross, deceased, supposed to contain fifty acres, in which said Sarah Ross and others are defendants, and James McCann is plaintiff. James McCann, upon his part, agrees and binds himself to waive all claim to damages sustained by destruction of dwelling-house, timber, *etc.*, and she agrees and binds herself to pay the said James McCann all legal costs and legal rents on said suit. Witness our hands and seals this 9th day of December, 1872.

her

"SARAH X ROSS. [Seal.]

mark

"JAMES McCANN. [Seal.]

"Witness: HENRY W. DIPE.

"JOHN B. RIGHTER."

Upon said agreement an action of covenant was brought in the Circuit Court of Harrison county, to October rules, 1877, by James McCann against Peter B. Righter, the committee of Sarah Ross, who was then insane, claiming five thousand dollars damages on account of her failure to pay to the plaintiff all legal costs and legal rents in the said suit in said indenture mentioned. During the progress of the trial of said action of covenant the court was asked to instruct the jury as follows, by the defendant's counsel, towit:

"If the jury find from the evidence that the plaintiff is entitled to recover for the rents of the fifty acres involved in the action of ejectment referred to in the record, they can only find for the value of such rents from five years before the filing of the claim for such rents, October 1, 1870, to the date of the agreement on which this suit is founded, December 9, 1872, together with interest thereon."

This instruction the court refused to give to the jury, and the defendant excepted. The action of the court in refusing this instruction is relied upon by the plaintiff in error as one of the errors, for which the judgment of the Circuit Court should be reversed; and while in our view of

the case it is not necessary to pass upon the question raised by the action of the court with reference to this instruction, yet as the question is raised by the assignment of errors, we deem it proper to give expression to our views upon the legal questions raised thereby.

Reverting to the early history of the action of ejectment, we find that in its early days it had no other object but to recover damages in favor of a lessee against any person who ousted him of his term; afterwards by section 2, c. 87, St. 1 Geo. IV., it was provided, among other things, that "the judge, before whom such cause shall come on to be tried, shall, whether the defendant shall appear upon such trial or not, permit the plaintiff on the trial, after proof of his right to recover possession of the whole or any part of the premises mentioned in the declaration, to go into evidence of the mesne profits thereof, which shall or might have accrued from the day of the expiration or determination of the tenant's interest in the same down to the time of the verdict given in the cause, or to some preceding day to be specially mentioned therein; and the jury finding for the plaintiff shall in such case give their verdict upon the whole matter both as to the recovery of the whole or any part of the premises and also as to the amount of the damages to be paid for such mesne profits; the said act not to bar any such landlord from bringing trespass for the mesne profits to accrue from the verdict on the day so specified therein down to the day of the delivery of possession of the premises recovered in ejectment."

Later still said action was resorted to mainly for the purpose of trying titles, and the damages claimed were merely nominal, but were recoverable in a separate action of trespass for mesne profits. In a writ of right the Code of 1819 (volume 1, p. 463, c. 118, § 10 provided that "at the trial any matter may be given in evidence which might have been specially pleaded, and upon the verdict, or in case of a demurrer, the like judgment shall be given, and upon such judgment the like execution awarded as in case of a writ of right; and the party for whom judgment shall be given shall recover his costs of suit, and the demandant, if he recover his seisin, may also recover dama-

ges, to be assessed by the recognitors of assize for the tenants withholding possession of the tenement demanded." In a writ of right, the damages were not demanded by the court, but were recovered upon the *mise* upon the mere right.

In the case of *Purcell* v. *Wilson*, 4 Gratt. 23, Judge BALDWIN, in delivering the opinion of the Court, says, in reference to the statute above quoted from the Code of 1819:

"The legislature must have contemplated such damages as were recoverable for a like wrong in some other kind of action, and, only nominal damages being, in practice, recoverable in ejectment at the date of that statute, the legislature must have had in view the damages recoverable in the action of trespass for mesne profits, which embrace the whole period during which possession of the land was withheld down to the possession recovered by means of the judgment in ejectment, but which the act of limitations, when pleaded, restricts as to the mesne profits that accrued prior to the action of trespass to the period beginning five years before that action."

Previous to the 6th of April, 1838, the damages which could be recovered in an action of ejectment in the state of Virginia were merely nominal. See 1 Rob. Pr. (Old) pp. 460, 461, where it is said: "If the jury find for the plaintiff on the general issue (which is the plea of not guilty) the effect of such finding is to declare the defendant guilty of the trespass and ejectment in the declaration mentioned; in addition to which the verdict assesses nominal damages." It is sometimes said that "the forms of the law are the best evidences of the law." Be that, however, as it may, in turning to Robinson's New Forms, (pages 173, 174) we find a form for the conditional order in ejectment, referring to Acts 1838, p. 75, c. 97, commencing as follows: "This day came the plaintiff, by his attorney, and filed his declaration against the defendant, with a note from the said plaintiff to J. B., and an affidavit thereunder written, and also a statement showing the amount of profits and other damages, which the plaintiff means to demand" *etc.*, which would seem to indicate that the practice then was to file such statement with the declaration.

This Court has, however, decided, in the case of *Witten* v. *St. Clair*, 27 W. Va. 762, that "such statement claiming profits or damages may be filed after the declaration has been filed and before trial; but, if not filed at the commencement of the action, the trial-court ought not to permit the same to be thereafter filed, when doing so might operate as a surprise or fraud upon the defendant."

In the case under consideration, the statement of profits and damages claimed by the plaintiff was not filed until the lapse of twenty two years and four months after the declaration was filed, and it was then filed in the county of Taylor, to which the action had then been removed. The action of the court in allowing said statement to be filed in said county of Taylor is assigned as an error by counsel for plaintiff in error, but we do not so regard it, for, if the plaintiff had a right to file said statement after such a great lapse of time at all, we are of opinion that it could be done in the county of Taylor; that it would follow the case into said county as one of its incidents.

If the plaintiff in the action of covenant was entitled to recover any portion of the rents and profits mentioned in said statement, it occurs to me that a more serious question is raised by the instruction which was asked for by the defendant, and refused by the court, seeking to limit the recovery of such rents and profits to a period embraced within five years before the filling of said claim. The act of April 6, 1838, was evidently intended as a substitute for the action of trespass to which the plaintiff was compelled to resort previous to that time, in order to recover damages for mesne profits.

In the consolidated cases of *James River, &c., Co.* v. *Lee*, *Same* v. *Wortham*, and *Same* v. *MacFarland*, reported in 16 Gratt. 431, Judge Moncure, delivering the opinion of the court, says: "The present Code dispenses with the necessity of an action of trespass for mesne profits, and makes the damages recoverable in the action of ejectment."

In the case of *Purcell* v. *Wilson*, 4 Gratt. 23, Judge Baldwin delivering the opinion of the Court says: "As regards the damages found by the special verdict, the Court is of opinion that, as at common-law, damages were not

recoverable in a writ of right, and the damages authorized by our revised act of 1818, concerning writs of right (1 Rev. Code, c. 118, s. 1, p. 464) are for the tenants withholding possession of the tenement demanded, the legislature must have contemplated such damages as were recoverable for the like wrong in some other kind of action; and, only nominal damages being in practice recoverable in ejectment at the date of that statute, the legislature must have had in view the damages recoverable in the action of trespass for mesne profits, which embrace the whole period during which possession of the land was withheld down to possession recovered by means of the judgment in ejectment, but which the act of limitations, when pleaded, restricts, as to mesne profits that accrued prior to the action of trespass to the period beginning five years before that action. "

The case of *Witten* v. *St. Clair, supra,* was an action of ejectment instituted in this State against a non-resident, and upon the question of jurisdiction Snyder, J. delivering the opinion of the Court says : "It, therefore, follows that while in this action the plaintiff, by service of process upon the defendant outside of the State, or by order of publication, was entitled to an absolute and conclusive judgment against the defendant, as to the land, whether the defendant appeared and pleaded to the action or not, it is clear that he was not entitled to a judgment for damages done to the land, without such appearance by the defendant. In this action, it does appear that the defendant appeared, and pleaded generally to the action ; but it does not appear whether he so pleaded before or after the claim for damages was filed by the plaintiff. If he pleaded after such claim had been filed, then his appearance should be regarded and treated as an appearance to the whole action, including the claim for damages, and in such case the court had jurisdiction to render judgment not only for the land, but for the damages also. But if, at the time the defendant pleaded to the action, no claim or statement demanding damages had been filed, his appearance could not properly be considered as an appearance to an action which included such claim. It, therefore, seems to me that, if the

defendant pleads to the action before such statement is filed, the court should not thereafter, without the consent of the defendant, permit such statement or claim for damages to be filed in the action, but should leave the plaintiff to his separate action in the proper forum to recover such damages."

This clearly indicates the distinct and independent nature of the claims asserted by the action of ejectment alone, and by filing the statement provided for by statute, and that a plea filed to the action of ejectment is no appearance or plea to a statement of account filed subsequently under the statute, and the justice of that decision is clearly evinced by the facts in the case under consideration. At the time the defendant, Ross, filed his plea of not guilty in the year 1849, no account for rents or mesne profits had been filed, and, no matter what plea or defence he might have been able at that time to interpose by way of set-off, in the nature of permanent improvements, or otherwise, no opportunity was afforded him, and he had no notice, that any such claim would ever be asserted, and not until over twenty one years thereafter was such claim asserted, and then by filing it in another county, to which the action of ejectment had been removed. This Court in the case of *Witten* v. *St. Clair, supra*, further says, in speaking of such statement: "It may be filed at the time the declaration is filed, or afterwards, before the appearance of the defendant, and before the trial. Whether it may be filed after the defendant has appeared and pleaded to the action is a matter which should be in the discretion of the trial court, to be reasonably exercised by it, so as to avoid surprise or injustice to the defendant."

Under the circumstances of this case, taking into consideration the great lapse of time between the date of filing the plea by the defendant and the date of filing the statement by the plaintiff, we do not think the court should have permitted the filing said statement, without the consent of the defendant, but should have left the plaintiff to his separate action in the proper forum, to recover the damages claimed; and when said claim was asserted by the plaintiff in a separate action, the defendant could

have pleaded the statute of limitations and prevented the plaintiff from recovering for more than five years anterior to the institution of such action.

In Tyler, Ej. p. 843, the author says: "The usual plea of the defendant in the action for mesne profits is the general issue, or not guilty, and, if the plaintiff declare against the defendant for having taken the mesne profits for a longer period than is allowed by the statute of limitations, the defendant may plead the statute of limitations, that is to say, not guilty within the period fixed by the statute before the commencement of the action, and thereby protect himself from all but the statutory period."

In the case of *Hill* v. *Myers*, 46 Pa. St. 15, in an opinion which reviews the authorities upon the subject to a considerable extent, the court held that, "in trespass for mesne profits after judgment in ejectment, the plaintiff can recover only for what had accrued within six years previous to the commencement of the action; for all rents, issues, and profits, accruing previously thereto, the statute of limitations is a bar."

In the case of *Budd* v. *Walker*, 9 Barb. 493, the court held "that, on a suggestion for mesne profits after a recovery in ejectment, the plaintiff can only recover for the six years next before the filing of the suggestion; he can not elect the six years next succeeding the commencement of the ejectment suit." Welles, J., in delivering the opinion of the court, says: "But, to return to the real question before us, we are clear that the six years' limitation in question terminates, or must be next before, the filing of the suggestion for mesne profits; that is, the time when the plaintiff put himself in motion with a view to obtain the object he seeks" *etc.*

The Revised Statutes of New York in existence and force when this decision was rendered provided (volume 2 p. 310, § 44) that, "instead of the action of trespass for mesne profits heretofore used, the plaintiff, seeking to recover such damages, shall, within one year after the docketing of the judgment, make and file a suggestion of such claim, which shall be entered with the proceedings thereon upon the record of such judgment, or be attached there-

to as a continuation of the same." This proceeding, it will be perceived, bears some analogy to the proceedings prescribed by our Code. Here a statement of the profits and other damages, which the plaintiff means to demand, is filed with the declaration; there a suggestion is attached to or filed with the record after the judgment in ejectment; but both here and there (to use the language of Judge Welles). "The time, when the plaintiff puts himself in motion with a view to obtain the object he seeks, is when the statement or suggestion is filed;" and, until that is filed, it can not be known that the plaintiff intends to assert a claim for profits or damages. It would hardly be just or fair to the defendant to hold, that, when such statement is filed, although it may have been delayed (as in this instance) for many years, it relates back to the institution of the ejectment suit, because the claim thus asserted may be pleaded to and controverted, and, such being the case, the defendant should not be deprived by the plaintiff's delays and laches of making his defence, before his witnesses have died or removed, or the facts and circumstances have been forgotten.

But, as before stated, the plaintiff, James McCann, in October, 1877, brought an action of covenant in the Circuit Court of Harrison county against Peter B. Righter, the committee of said Sarah Ross, who was then insane (and her husband, Cyrus Ross, as appears by the record, had been dead for several years) claiming five thousand dollars damages on account of her failure to pay all legal costs and legal rents in said suit (meaning the action of ejectment aforesaid) which suit was predicated upon the article of agreement between James McCann and Sarah Ross, hereinbefore set forth.

The only plea filed by the defendant was the plea of *non est factum.* The case was presented to a jury and resulted in a verdict for the plaintiff of three thousand, eight hundred and seventy dollars and eighty eight cents. The defendant moved in arrest of judgment and asked the court to set aside the verdict of the jury and grant him a new trial, upon the ground that the court had erred in refusing to give the jury an instruction prayed for him, which has

been hereinbefore quoted, and because the verdict was contrary to the law and the evidence, which motion the court overruled and rendered judgment on said verdict, and for costs, and the defendant excepted. It appears from the bill of exceptions taken that the plaintiff gave in evidence to the jury said agreement between James McCann and Sarah Ross, also the record of said ejectment cause, from which the facts appear, which have heretofore been stated. It further appears, that on the 1st day of March, 1878, the following order was made in said ejectment case, towit: "For more than four years there has been no order or proceeding in this action only to continue it; and therefore this action is struck from the docket."

The plaintiff also proved that Cyrus Ross, the defendant in said action of ejectment, had possession of the fifty six acres of land in controversy from and during the year 1846 until his death in March, 1873, under said agreement, and that the rental value of said land was sixty dollars *per annum* during all that time. Could the legal rents and costs, which said Sarah Ross agreed to pay, be ascertained and recovered in said action of covenant? In asserting his claim for said rents and profits the said James McCann might have resorted to a separate action, but he made his election to pursue the remedy prescribed by statute by filing his statement in said ejectment suit, and the covenant of Sarah Ross was to pay all legal costs and legal rents in said suit—that is, to be ascertained therein—and the plaintiff was to take judgment in said ejectment suit by default. How, then, should the plaintiff have proceeded to ascertain what were the legal rents in said suit? Our statute is plain and positive pointing out clearly the manner, in which such damages shall be assessed, that is, damages for mense profits of the land. Section 31, c. 90, of the Code, provides:

" If there be no issue of fact tried in the cause, and judgment is to be rendered for the plaintiff on demurrer, default, or otherwise, the said damages shall be assessed by the Court, unless either party shall move to have them assessed by a jury, or the Court shall think proper to have them so assessed, in which case a jury shall be impanelled to assess them."

But instead of proceeding in this manner, when said Sarah Ross made no further defence, the case was allowed to be stricken from the docket under the four-years' rule, without taking any steps in said action of ejectment to ascertain " the legal rents in said suit," or any judgment for costs ; and the value of said rents not having been ascertained in the mode prescribed by statute, I am clearly of opinion they could not be ascertained in this action of covenant.  The course, which the plaintiff elected to pursue for the recovery of said rents and profits in said action of ejectment, is a statutory proceeding and under the rule must be construed strictly ; but instead of doing this the plaintiff seems to have abandoned his case and did not even take judgment by default.  There was no finding by a jury.  The damages were not assessed by the Court; and neither party moved to have them assessed by a jury ; and the Court does not appear to have thought proper to have them so assessed ; so that the legal rents were not ascertained in said suit in any manner contemplated by the statute or otherwise.  That was, however, what Sarah Ross agreed to pay the legal rents on (in) said suit (to be ascertained) ; that is, what a jury impanelled therein might have ascertained, or the Court may have assessed in said suit, and what might have been thus ascertained we know not.  We do know what a jury impanelled in another and different case has ascertained, but we can not say that a jury impanelled several years before in the action of ejectment in the lifetime of said Cyrus Ross, or before said Sarah Ross became insane, or even afterwards, would have ascertained the same amount of rents and profits as was ascertained by the jury in this action of covenant.

The action of ejectment continued pending in Taylor county until the 1st of March, 1878 ; and this action of covenant appears to have been brought to October rules, 1877, so that the plaintiff, if he had been so disposed, could have asked the Circuit Court of Taylor to assess the damages or impanel a jury to do so, at the time he brought his action of covenant; and that, we think, is the only way said rents and profits could be legally ascertained.

In the case of *James River, etc., Co.* v. *Lee, Same* v. *Wortham*, and *Same* v. *MacFarland*, 16 Gratt. 432, Moncure, J., says: "Certainly, if such a statement be filed, an order of inquiry of damages would be necessary. Code c. 90, s. 31. And so also is such an order necessary, though no such statement be filed, if the right or title of the plaintiff expired after the commencement of the suit, in which case, the law provides that, judgment shall be entered for his damages sustained from the withholding of the premises by the defendant, and, as to the premises claimed, the judgment shall be that the defendant go thereof without day.' Id. § 28. In the latter case, the plaintiff is certainly entitled to his costs, and the mode of recovering them is by continuing the prosecution of the suit for the damages."

We think the court below committed an error in allowing the value of the rents to be ascertained by a jury impanelled in said action of covenant. For these reasons, the judgment complained of must be reversed.

Lucas, P., concurs.

Brannon, Judge:

I can not assent to all that is contained in the foregoing opinion. I would reverse, because the amount found is too great, for reasons which it would answer no purpose to state; but I am of the opinion that in this action of covenant based on the instrument in the declaration mentioned a recovery can be had, and that plaintiff is not confined to proceedings in the action of ejectment to recover the rent.

Reversed.