# CHARLESTON

CAMDEN *v.* THE WEST BRANCH LUMBER CO.

Submitted February 13, 1906.    Decided February 27, 1906.

1.   ADVERSE POSSESSION—*Junior Patent—Interlock—Actual Possession.*
      The actual possession of the owner of a tract of land, lying adjacent to another tract of uncleared land, the title to which is vested in another person by a grant from the State, is not extended over a portion of such other tract by the acquisition of a junior patent, covering such portion and purporting to vest title thereto in the owner of such first mentioned tract, however long such possession may continue. To work an ouster of the elder patentee and hold adversely to him, the junior patentee must take actual possession of some part of the land included in the junior patent and within the boundaries of the senior patent. (p. 160.)

2.  UNLAWFUL DETAINER—*Lease—Color of Title—Possession.*

    For evidential purposes in an action of unlawful entry and detainer between the owner, or a claimant under color of title, of a large tract of land and another person, possession of a small portion of such tract by a tenant of such owner or claimant, under a lease restricting the right of occupancy and use of the land by the tenant to such small portion, is, in legal effect, possession by the owner or claimant of so much of the entire tract as is not in the actual, hostile possession of some other person.  (p. 163.)

3.  UNLAWFUL DETAINER—*Evidence.*

    In an action of unlawful entry and detainer, it is not reversible error to refuse to allow the introduction, by the defendant, of a deed or contract showing he does not own, and is not in possession of, a portion of the land sued for.  (p. 164.)

Error to Circuit Court, Braxton County.

Action by J. N. Camden against the West Branch Lumber Co., a corporation.  From a judgment in favor of plaintiff, said Lumber Co. brings error.

*Reversed.*

MALLOHAN, McCLINTOCK & MATHEWS, for plaintiff in error.
W. E. HAYMOND and A. W. CORLEY, for defendants in error.

POFFENBARGER, JUDGE:

The West Branch Lumber Company, a corporation, complains of a judgment rendered against it in an action of unlawful entry and detainer, instituted by J. N. Camden, in the circuit court of Braxton county, by which judgment, possession of a tract of land containing two hundred acres, claimed by said corporation, was given to said Camden.  The errors assigned relate to instructions given and evidence excluded.

The plaintiff below, defendant in error, derived his title from Andrew Perrine, who obtained a grant for said two hundred acres of land from the Commonwealth of Virginia on the second day of April, 1855.  Perrine then owned a tract of seventy-five acres granted to Mifflin Hines in 1819, and conveyed to his ancestor, Lewis Perrine, by deed dated September 1, 1837, a boundary line of which touched, at one point, said tract of two hundred acres.  Camden introduced the patent for the two hundred acres issued to Andrew Perrine; a deed executed by A. S. Knight, Virginia Knight,

W. R. Perrine and others, heirs of Andrew, Perrine, dated January 17, 1887, conveying to J. S. Hyer and A. C. Dyer said tract of two hundred acres; a deed from J. S. Hyer and wife and A. C. Dyer and wife, dated July 18, 1890, conveying said two hundred acres to J. N. Camden; a deed from Lewis Perrine and wife, dated September 1, 1837, conveying said seventy-five acre tract to Andrew Perrine; a deed from George McElwain and Andrew Perrine, dated January 10, 1843, conveying to Andrew Perrine sixty-one acres of land, a part of a tract, containing one hundred and sixteen acres.

The defendant below derived its claim of title as follows: A grant of a tract of five thousand acres made by the Commonwealth of Virginia, on the 13th day of April, 1786, to Samuel Young; sale and conveyance of said tract, as delinquent and forfeited land, under proceedings had in the circuit court of Braxton county in 1841, by the Commissioner of Delinquent and Forfeited Lands, to Gideon D. Camden, by deed bearing date April 13, 1842; a deed from said Camden to Francis Albright, dated April 15, 1842, a deed from Norman D. Squires, recorder of Braxton county, William L. J. Corley and Morgan H. Morrison to Henry Brockerhoff and others, dated September 9, 1870; a deed from William L. J. Corley. clerk of the county court of Braxton county, to A. N. Ervin, dated January 3, 1879; a deed from A. N. Ervin and wife to Margaret C. Brockerhoff, dated September 6, 1879; a deed from Andrew Brockerhoff and others to the West Branch Lumber Company, dated December 20, 1889. All of the above mentioned deeds refer to the land by them conveyed as the land patented by Samuel Young and evidence was introduced on the trial tending to prove that the two hundred acre tract of land in controversy lies within the five thousand acre tract granted to Samuel Young in 1786, and was not excepted therefrom.

Plaintiff below proved that Andrew Perrine had resided for many years on said seventy-five acre tract of land at the time he obtained the patent for said two hundred acre tract: but did not then take and hold actual possession of the latter tract. He never at any time resided on it, but kept the taxes on it paid and cleared a small space on one corner of it. A clearing made on the seventy-five acre tract extended slightly over

on to said two hundred acre tract. When this was done, does not appear, but it must have been prior to 1890, as it was done by Andrew Perrine, who died before that time. Nothing in the evidence indicates whether this occupancy continued for any length of time. Soon after Camden pur-chased the land he sold the timber on a part of it to B. H. Camden and H. P. Camden, who, about 1892 or 1893, took off of it the timber purchased by them, and, while these tim-bering operations were in progress, some houses were built on the land for use in connection with them. Near that date, the West Virginia and Pittsburg Railroad was built through said tract, and a number of persons, employed in. the con-struction of the road, settled at various points on the land along its line. After the completion of the timber opera-tions and the construction of the railroad, some of the peo-ple, who had come there as employes, remained upon the land; and whose tenants they were, and who had possession of the houses and small cleared lots after these operations ceased, were controverted matters in the trial. The only evi-dence tending to show any occupation of the land prior to the cutting of the timber and the building of the railroad is that of Jacob A. Hosey, who says he built a house on it for Hudson Knight, a son-in-law of Andrew Perrine, before the war, but never completed it and it was never occupied. This man built some of the houses for the railroad company or its contractors. Elizabeth Mowery moved in the old house built by Hosey before the war, when B. H. and H. P. Cam-den were taking the timber from the land, and she says B. H. Camden told her she could stay there as long as she wanted to, and furnished lumber to put a floor in the house. She further says she put out fruit trees which still remain on the place; that she kept the property for four years, and that A. W. Corley, agent for J. N. Camden, told her to come there and stay as long as she wanted to. At another place about a quarter of a mile distant from the house which Mrs. Mowery occupied, a Mrs. Treanno was residing in a house on the land in controversy at the time this action was com-menced, claiming to be a tenant of J. N. Camden. She also went on the property while the timber operations were in progress, with the consent of B. H. Camden, as an employe of the Camdens, or one of their contractors. She then oc-

cupied a small house near the one occupied by the Camden laborers and contractors, and, after they left, moved into the house which they vacated. A. W. Corley testified that she was there in July, 1892, with his consent, as tenant of Camden. Her name was then Mrs. Hicks, and some time afterwards Mose Treanno married her, and moved into the house with her. Around this house there was a small piece of cleared land under fence, containing five or six acres. Mrs. Treanno exhibited in connection with her testimony some letters from J. N. Camden to her showing that they recognized each other as landlord and tenant, respectively. The letter of earliest date was written in 1901, but she claims to have had some older that had been destroyed.

A. W. Corley testified that he, as agent of J. N. Camden, gave permission to one Chapman, who had a contract for grading some part of the railroad, to erect shanties and such other houses on the land as might be needed for the accommodation of his employes in that work.

The defendant introduced in evidence a number of leases executed by Brockerhoff and others, claiming the title, held by the defendant company. These are as follows: One executed by M. C. Brockerhoff to Moses Treanno, dated the —— day of June, 1895; one exeuted by said Brockerhoff to Jesse Hosey, bearing date June 1, 1895; one executed by said Brockerhoff to Elben and Clarke Cogar, bearing date December 25, 1897; another executed by the West Branch Lumber Company to J. H. Spencer, dated May 9, 1900; another by the West Branch Lumber Company to John Paulhamus & Son, dated January 1, 1900; another by Paulhamus & Son to F. W. Carpenter, dated February 15, 1901. Jesse Hosey testified that he had moved into a house, belonging to Chapman, the railroad contractor, in 1893; that neither Mrs. Treanno nor Andrew Mowery was living there at that time; and that the only person occupying any part of the two hundred acre tract at that time was Carlisle Cogar, who was running a camp for men employed by McIntire, who was engaged in the Camden timber operations. Hosey continued to reside there, and, on the first day of June, 1895, entered into the written contract of lease with M. C. Brockerhoff, which the defendant put in evidence as above stated. He further stated that, before he moved on to the two hundred acre tract, he

had resided on another part of the five thousand acre Albright survey, which included said two hundred acre tract, under a written contract of lease, entered into with I. B. Cogar, agent for Brockerhoff. Under the lease on the two hundred acre tract, he held an acre and a half of land under fence for a period of three years, and the line of said tract ran through this space. Moses Treanno says his wife was not present when he took the written lease from Brockerhoff and knew nothing about it. Benjamin Carpenter testifies that nobody lived on the two hundred acre tract until the railroad was built. John Dunlap testified that he had been employed by Brockerhoff in August, 1897, to take care of the land in controversy and adjoining lands claimed by him; that he put no tenants on the land, but that there were several living on it; that he let Mr. Detimore have a small piece of it, in 1889, for one year, with the understanding that he would get a lease of it; that there was then no person in possession of the lot on which he put Detimore as a tenant, but that Mr. and Mrs. Mowery had previously occupied it, and that he purchased from Mrs. Mowery, after she had left the land, her claim to the premises which, from what she had said to him about it, he considered a mere "Squatter's claim." Detimore never lived on the land, and, under a verbal agreement with Dunlap, on behalf of Brockerhoff, he fenced up the lot, cultivated it one year and then rented it to E. L. Taylor. He testifies that in 1898, to the best of his recollection, Mrs. Treanno had showed him a letter from J. N. Camden which was in substance as follows: "You said in your letter you are on my land, and if you are, stay where you are." Dr. Brockerhoff, President of the West Branch Lumber Company, and son of M. C. Brockerhoff, hereinbefore mentioned, testified that the two hundred acres in controversy is part of the Albright Survey and wholly within it; that he and those under whom the defendant claims had had possession of said two hundred acres since the purchase thereof in 1879; that no tenants had occupied the land except under leases given by the defendant and those under whom it claimed; that there were only three pieces of the tract capable of occupation and they had had tenants on them; that the two hundred acre tract is entirely surrounded by the other Brockerhoff land, except at one point where an acute angle thereof touches the

Andrew Perrine seventy-five acre tract; that he had had personal charge of the land since 1895, prior to which time Jordan Cogar and Isaac Cogar had successively been in charge of it as agents; that at the time the Camdens took timber from it, 1892, he had no knowledge of the Camden claim; nor of any timber having been cut from the two hundred acre tract; that he had had direct control of the tenants on the two hundred acre tract of land for the last five or six years, and that they were holding under the leases hereinbefore mentioned; that he knew nothing of the Camden claim until 1896 or 1897; that the lands were known as the Brockerhoff lands; that there were always tenants on all parts of them, Jordan Cogar having ordinarily had different tenants on the tracts, at places which he did not specify; that Cogar had reported to him and his co-owners that there were tenants on different parts of the land; that he did not know who the tenants were in 1894; and that he had no personal knowledge of any tenants on the land prior to 1895.

By John Newlon, deputy clerk of the county court of Braxton county, the following facts, concerning the taxation of the Albright survey, were disclosed: "In the year 1865, 4713 acres was assessed to Francis Albright, described as lying on Elk River. For the years '66 and '67 the same land was charged on the books to George Gregory as a tract of 5000 acres. From '68 to '70 assessed to Francis Albright's heirs and Geo. Gregory. From '71 to '77 same tract of land was assessed and charged on the land books as 4715 acres charged to Henry Brockerhoff and others. '78 and '79 charged to Henry Brockerhoff and others. From '80 to '82 it was charged to M. C. Brockerhoff as 4713 acres. From '82 to '85 charged to M. C. Brockerhoff as 4713 acres. From '88 to '97 to M. C. Brockerhoff as 4588 acres. From '97 to 1901 the West Branch Lumber Company, 4655 acres. From 1901 to 1903 the same."

Instruction No. 4, given at the instance of the plaintiff, over the objection of the defendant, is the basis of one of the principal assignments of error. It reads as follows: "The court further instructs the jury that if they believe from the evidence that Andrew Perrine and those claiming under him had possession by actual occupancy of the tract of 75 acres of land; and that the tract of 75 acres of land is adjoining

the tract of 200 acres of land; and that there was no other possession within the limits of the 200 acres of land; and that the said Andrew Perrine and those claiming under him, had actual, continuous, adversary possession of the said 75 acres, claiming the said 200 acres under the grant to Andrew Perrine read in evidence in this cause; then such possession of Andrew Perrine was actual, adversary possession of the tract of 200 acres of land; and if the jury believes that such possession was continued for a period of 15 years prior to the first day of April, 1869, or for a period of ten years after that time then such possession and claims of title to the land under said grant made a perfect title to the said land in the said Andrew Perrine and those claiming under him. And this is true whether the land was subject to grant by the Commonwealth at the time of the patent or not."

In passing upon the exception to this instruction it is necessary to keep in view the nature of the action and the principles involved therein. The action of unlawful entry and detainer differs in very material respects from that of ejectment; but many rules and principles, governing the trial in the latter action, apply in the trial of the former. What they are depends, in some measure, upon the nature of the evidence adduced and relied upon. In some instances, the question of title is never involved. In others it is, and, when it becomes important, in ascertaining the right of possession, the only question actually and finally determined in this class of actions, its influence is potent and far-reaching. A mere trespasser, having not a shadow of right to the possession, may maintain his possession against everybody but the true owner or some other person who shows himself to be entitled to the possession. Such owner or other person need never to have had the actual possession. It suffices for him to show title in himself, because title gives a right of entry, a right to the possession, a right against which a mere trespasser can make no defense. *Duff* v. *Good*, 24 W. Va. 682; *Garrett* v. *Ramsey*, 26 W. Va. 345; *Billingsley* v. *Stutler*, 52 W. Va. 92; *Olinger* v. *Shepherd*, 12 Grat. 262. Thus, though the question of title is not determined in the action, it is an important element in the evidence in determining the right of possession.

It is of immense importance in another class of cases,

namely, where there is actual possession by both parties of parts of a tract or body of land, covered by conflicting title papers such as patents and deeds, as in the case of interlocks. If the owner of the better title has the actual possession of any part of the land in controversy, his possession is held to extend to all the land included within the exterior boundaries of the deed or patent under which he claims, that is not in the actual possession of the other party. *Olinger* v. *Shepherd*, 12 Grat. 462; *Garrett* v. *Ramsey*, 26 W. Va. 345. "The title draws to it the possession of the land not in the adverse possession of another. Actual possession of a part of a tract of land under a *bona fide* claim and color of title to the whole tract, is possession of the whole, or so much thereof as is not in the actual adverse possession of others. This is the general rule in actions of trespass and ejectment. And it has been held by this Court in an action of unlawful entry and detainer that, where a party is in the actual possession of a part under a *bona fide* claim and color of title to the whole, he has a sufficient possession of the residue of the tract to entitle him to recover possession thereof against a wrong-doer who enters upon such residue, and who has not the right of entry thereon. But the owner of such residue, or those authorized under him, may lawfully enter upon such residue without force and hold the same. *Moore* v. *Douglass,* 14 W. Va. 708." *Duff* v. *Good*, 24 W. Va. 682. This applies the rule in ejectment cases to actions of unlawful entry and detainer. It allows a recovery by a *bona fide* claimant, having good title, or having color of title, in possession of part of the land he claims, against one who unlawfully, that is, without right, enters upon another part of the same tract lying beyond the enclosure of the owner. In other words, the actual possession of the claimant, occupying a part of the land claimed, extends to the whole of the tract and legally covers every part thereof not in the actual possession of some other person. *Garrett* v. *Ramsey*, 26 W. Va. 345. In *Moore* v. *Douglass*, 14 W. Va. 708, 732, the law is summarized by JUDGE HAYMOND as follows: "The nature of the possession, to which this summary remedy applies, is not confined to a possession by actual occupancy or enclosure; it applies to any possession which is sufficient to sustain an action of trespass. Title draws

after it possession of property not in the adverse possession of another. Actual possession of a part of a tract of land, under a *bona fide* claim and color of title as to the whole, is possession of the whole, or so much thereof as is not in the actual possession of others. This is the general principle and it applies to the remedy in question."

Title may be acquired by grant or by adversary possession. The latter is a prescriptive title or right, presupposing a valid grant, and deriving its strength and virtue from the statute of limitations, barring the remedy. In order to acquire such a title it is not necessary to have the whole of the tract of land actually enclosed or in actual occupation. It suffices that some part of it be in actual, open, exclusive and continuous possession under color of title. If the entry or possession be under color of titie, such as a deed, or a patent, defining the boundaries of the tract, a part of which is so actually occupied, such actual possession extends to the exterior bounds of the tract as defined by the deed or other instrument under which possession is taken. Since title to the whole tract may be thus acquired by holding possession of a part only, the actual possession must be deemed to extend to the whole tract during the entire period required for the ripening of the possession into a perfect title. Therefore, for the purpose of determining the right of possession, in a summary proceeding, such as this, as well as in an action of ejectment, such possession must extend to the limits of the entire boundary. Nothing can disturb this possession, or work an ouster of the holder thereof, but an actual entry by some other person upon some part of the tract. Thus, in the case of an interlock, if the owner of the elder title be in the actual possession of a part of the land covered by his patent, but outside of the interlock, and the holder of the junior patent be in possession of a part of the land covered by his patent, but outside of the interlock, the actual possession of the holder of the better title is deemed to extend to, and cover, every part of the interlock. Strict adherence to this common law rule would limit the adverse possession of the junior patentee within the interlock to his enclosure or the land actually occupied, his *pedis possessio*. As this would work great hardship and injustice, the courts have so far modified it as to make the

actual possession of the junior patentee within the interlock extend to the whole thereof, provided the senior patentee has not also a *pedis possessio* within it. See *Garrett* v. *Ramsey*, 26 W. Va. 345, 375, opinion of JUDGE SNYDER. Hence, if the claimant under the junior patent is in the actual possession of some part of the interlock, his possession is deemed to extend to every part thereof. If, on the contrary, the claimant under the older patent is in possession of another part thereof, then the possession of the former extends to all the land in the interlock not in the actual possession of the other party. If, in any one of the instances just stated, the relation of the parties to one another and to the land be maintained for a period of ten years, their respective titles will be determined and fixed by their possessory holdings, independently of the rights which their title papers appear to vest in them.

In ejectment law, however, a possession for less than ten years is utterly worthless and unavailing as a basis of recovery. It must go down before a good paper title. But, if it has continued for ten years, it will prevail over a perfect paper title; and, though it be for a period, less than ten years, the land cannot be recovered against it, in ejectment, unless the plaintiff shows title in himself. That the occupant is a mere trespasser on the lands of another person does the plaintiff no good, unless he is such other person. Mere color of title, without ten years possession under it, is worthless to the plaintiff in ejectment, however long he may have been in possession, short of said period.

By parity of reasoning, certain similar conclusions are attained in the law governing the action of unlawful entry and detainer. In this law, the period of limitation is three years. A wrongful possession, for a period of less than three years, is, therefore, worthless to the defendant, whether he holds under color of title or without a shadow of title, if the plaintiff show good title in himself. But his actual possession, no matter how taken, will avail him as a good defense against all persons who are unable to show title or a right of entry. No person, demanding possession of him, under a mere color of title, can recover from him. If he holds, not under color of title, but under a mere claim of title, there being no written instrument defining the limits

of his claim, his right of possession is limited to the *pedis possessio*, his actual enclosure. But if he holds under color of title, it extends to the boundaries therein defined. And, in either event, if he has had such possession for a period of three years, it is a good defense against the world in an action of unlawful entry and detainer. The statute does not allow a recovery of the possession from a defendant who has been in possession for that period of time, although the plaintiff has a perfect paper title to the property. He may recover, but not in such action. He must resort to his action of ejectment. *Billingsley* v. *Stutler*, 52 W. Va. 92.

In applying these principles, it is to be observed that the defendant relies upon a patent issued in the year 1786, covering all the land in controversy, as well as a number of deeds purporting to give title to the same land. These seem to vest a perfect paper title in the defendant, and such title, without actual possession, puts every foot of land within the boundaries fixed by the paper title constructively in the possession of the owner. This possession cannot be broken except by the actual possession of some other person within those bounds. The two hundred acre tract is not an interlock nor lap made by a junior patent, covering it and other lands beyond the limits of the Young survey. It lies wholly within it. If it were such a conflicting patent, and a claimant thereunder held possession, under it, of some part of the land included within it, but outside, and beyond the limits, of the Young survey, such possession would not break the possession under the Young patent. It requires actual, hostile possession within the Young patent to do that. But if there were possession, within the Young survey, of some part of the land, covered by the Perrine patent of 1855, then such possession would be regarded as extending to the limits of said two hundred acre patent, provided some part of it were not in the actual occupation of the owner of the elder title. In that case, possession, within the interlock, under the junior title, would be limited to the land actually occupied. It is not pretended that the possession of the adjoining seventy-five acre tract by Andrew Perrine could, in any way, affect said two hundred acre tract, until after he had obtained the patent for it in 1855. At that time, the holder

of the Young patent, for anything that appears in this record, had valid title to all the land lying within the boundaries thereby defined. Such title drew to it the right of possession and the owner thereof had constructive possession of the whole of said tract, including the two hundred acres. Nothing short of an actual entry upon, and taking possession of, some part of that land could destroy that possession or work a disseizin of the owner of the land to which it extended. By obtaining a patent for a part thereof, Perrine did no act upon the land, took possession of no part of it, did nothing on it which gave any notice whatever of an adverse claim. To work a disseizin or ouster, it is not enough to set up a mere claim by obtaining a deed or patent or otherwise. It requires an adverse holding, actual occupation of the land, and such as is calculated to give notice. Perrine's continuous occupancy of the seventy-five acres, after obtaining the patent for the contiguous two hundred acre tract, did not give any notice. If possession of the latter tract at all, it was silent *clam* possession, not in any way apparent. His recorded muniment of title, if recorded, was notice only of the holding of paper title, or color of title, not of possession.

The court below, in giving the instruction complained of, assumed that the case of *Overton* v. *Davisson*, 1 Grat. 211, justified its action. That case does say "Upon the question of adversary possession, it is immaterial whether the land in controversy, is embraced by one, or several coterminous grants of the older, or younger patentee; in either case, the land granted to the same person by several patents, is to be regarded as forming one entire tract." The principle was applied by this Court in *State* v. *Harman*, 57 W. Va. 447, (50 S. E. 828), but it is to be observed that neither of those cases presents the same state of facts that appears in this case. There was an actual possession, under the junior title, within the boundaries of the senior title. Close attention to the terms in which the proposition is stated, and its logical connection with other principles enunciated in the decision, makes it manifest that, in the case of an interlock, the claimant must put his foot on some part of the land in controversy, and that it is not enough to make his actual enclosure or perform other acts of dominion, on land claimed by him outside of the interlock. The rule applies "upon the question

of adversary possession." Such possession never occurs until there is a disseizin or ouster of the owner. To effect that, an actual, not merely a legal or constructive, entry must be made within the bounds of the title to which adverse possession is asserted, and the possession relied upon must be there only, or there as well as on other portions of the junior grant, lying outside of the interlock. In other words, possession of part is not possession of the whole, if the junior grant conflicts with the senior, unless the actual possession itself is within the interlock, as shown by improvements, or other sufficient acts of dominion, done on the interlock. See points 4, 8 and 9 of syllabus in *Overton's Heirs v. Davisson*. The proposition is plainly stated in *Taylor's Devisees v. Burnsides*, 1 Grat. 166, 196, by Judge Baldwin, as follows: "The question whether the possession of a party be actual, often arises, upon conflicting titles, under the operation of the rule, that possession of part is possession of the whole. Where the abuttals of the conflicting titles are the same throughout, the question is of easy solution, upon the principles already stated; but it is sometimes attended with difficulty where the abuttals are different, in the whole or in part. There the limits of the one title are either embraced in the broader limits of the other; or the limits of the two conflict, and cause an interlock. Take, for example, the case of two patents thus interfering. If the junior patentee settles within the boundaries of his grant, but outside those of the older patent, in such case, I think, he gains thereby no actual possession of the land in controversy, whether the possession of the older patentee be actual, or constructive only. For though where there is no controversy, the rule that possession of part is possession of the whole, is to be taken in reference to the entire tract; yet where there is a conflict of titles, it is to be taken in reference to such conflict. And without actual possession of some part of the land in controversy, the junior patentee can gain no possession of the subject, against the better right of the older patentee. This, I consider, perfectly just and reasonable; for otherwise the lawful owner might be disseized not only without his knowledge, but without the means of acquiring it." In *Sulphur Mines Co. v. Thompson*, 93 Va. 321, the proposition is declared to be settled law. In *Overton v. Davisson*

and other cases in which the contiguous tract rule has been applied, the possession was adverse, hostile, within the bounds of the elder patent.

To show that Judge Baldwin, in delivering the opinion in *Overton* v. *Davisson*, did not mean to express any views inconsistent with what has been hereinbefore asserted, as to the necessity of actual possession, to work a disseizin or ouster of an elder patentee, or, in other words, to destroy his constructive possession, the following is quoted from his opinion in that case: "The court is further of opinion, that where lands have been granted by the Commonwealth to different persons, by conflicting patents, the junior patentee cannot, under any circumstances disseize or oust the older patentee from, or acquire an adversary possession of, the land in controversy, but by the actual occupation of some part thereof, by acts of ownership equivalent to such actual occupation; and that while such patented lands remain completely in a state of nature, they are not susceptible of a disseizin or ouster of, or adversary possession against, the older patentee, unless by acts of ownership effecting a change in their condition." Nothing in any decision warrants a departure from this principle. On the contrary, it has been uniformly recognized and enforced. *Turpin* v. *Sanders*, 32 Grat. 27; *Koiner* v. *Rankin*, 11 Grat. 420; *Kincheloe* v. *Tracewell*, 11 Grat. 587; *Taylor's Devisees* v. *Burnsides*, 1 Grat. 165; *Cline's Heirs* v. *Catron*, 22 Grat. 392; *Ilsley* v. *Wilson*, 42 W. Va. 757; *Garrett* v. *Ramsey*, 26 W. Va. 345; *Congrove* v. *Burdett*, 28 W. Va. 220. This is radically inconsistent with the other proposition in *Overton* v. *Davisson*, as interpreted by the attorney for the defendant in error. The rule was applied in *Rich* v. *Braxton*, 158 U. S. 375, *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417, and *Ewing* v. *Burnett*, 11 Pet. 41, but, in those cases, the possession relied upon was within the boundaries of the land actually in controversy.

In *Harman* v. *Ratliffe*, 93 Va. 249, the Virginia supreme court of appeals made a distinction between *Overton* v. *Davisson* and such a case as is presented by this record. Point 2 of the syllabus says: "Where the State has, by conflicting patents, granted uncleared lands, which adjoin the home tract of the junior patentee, the possession by the junior

patentee of his home tract, claiming possession of the land granted by the conflicting patents, is not extended to the lands thus granted so as to give him adverse possession as against the senior patentee.''

Our conclusion, from the foregoing examination of the question and review of the authorities bearing upon it, is that the court erred in giving said instruction No. 4.

To break the force of the evidence for the defendant, as to its possession by tenants under lease, the court, at the instance of the plaintiff, gave the following instruction: ''The court further instructs the jury that possession by tenants under a writing limiting the tenants to any particular part of a tract of land, limits the possession to that particular part and does not constitute possession of any land outside of the limit of the contract under which the tenant holds, and this is true even if the contract does provide that the tenant endeavor to prevent trespass to other parts of the land.'' The leases were all very similar and gave to the lessees, respectively, the use of the land which was then in their possession and contained an express stipulation that they were to have the use of only those parts of the land as then under fence and in their actual occupancy. By them, the tenants were bound neither to cause, nor permit, any waste by the cutting or removal of the timber or otherwise, and to promptly notify the lessor of any acts of trespass upon any of the land. No authority is produced for the proposition stated in the instruction, and it seems to be contrary to reason as well as legal principle. What a man may do himself, in the matter of taking and holding possession of real estate, he may do by another. As hereinbefore shown, actual possession of any part of the land is possession of the whole thereof. This results from natural limitations upon the power of occupation. No man can be in the actual physical occupation of all his lands at one time, unless he has them all under fence or in cultivation, a thing very unusual in this country of vast areas of land, far exceeding the requirements of actual occupation and cultivation. In that respect our lands are out of proportion to our population. Possession by one's tenant is his own possession. *State* v. *Harmon*, 50 S. E. 828, holds that the possession of a vendee under an executory contract of sale of a tract of land is the possession of the vendee and

extends to the whole of the tract from which the part was sold. It seems to me that a tenancy of a part of a large tract is a much stronger case. The limitation of the lease to a specific part of the tract does not prevent the possession under the lease from being possession on behalf of the lessor, under the title of the lessor, nor of a part of the tract of land claimed under that title. It is an open, notorious and exclusive act of dominion on the part of the lessor, as much so as if he were himself the occupant thereof. We, therefore, conclude that the court erred in giving said instruction No. 6.

The contention that these are harmless errors for which the judgment should not be reversed is not well founded. There is evidence of possession by the defendant. Its sufficiency to sustain a verdict for the defendant, had one been rendered, is a matter with which the Court cannot deal in the present status of the case. It is for the jury first, unless by some proper action, the question is brought before the court. *State* v. *Clifford*, decided at the present term. If the plaintiff had tenants who sold out or attempted to attorn to the defendant, there is evidence of other tenancies of the defendant free from such taint.

The remaining assignment of error is predicated upon the action of the court in refusing to allow the introduction of a contract executed by Margaret C. Brockerhoff and the West Virginia and Pittsburg Railroad Company, purporting to grant and convey to said railroad company a right of way sixty feet wide through her lands on Elk River and Laurel Creek in Braxton and Webster counties. This contract was offered for the purpose of proving that the railroad company had taken possession of the strip of land granted as aforesaid, constructed its road thereon and was, at the time of the institution of this action, and had been for a long time prior thereto, in possession of said strip of land; and it is urged that the court should have permitted it to go in to prevent a recovery by the plaintiff of the possession of said right of way. The usual method by which a defendant relieves himself of the necessity of defending as to a tract of land which he does not hold, is disclaimer. This was not done, but as the defendant was not in possession of the railroad right of way, and the railroad company was not a party to the action,

how either the defendant or the railroad company can be prejudiced or injured by a judgment covering such right of way is not perceived. It takes from the defendant nothing that it owns or claims. As to the railroad company, it is a judgment acquired without citation or hearing, and is, for that reason, null and void. Therefore, there was no duty resting upon the defendant to ward off, by the introduction of this contract, a harmless judgment.

For the errors hereinbefore noted, the judgment must be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.*