# CHARLESTON.

RIFFLE *v.* SKINNER.

Decided February 15, 1910.

1. EJECTMENT—*Evidence—Title in Plaintiff.*

   In ejectment it suffices affirmatively for the plaintiff to show a recoverable legal title in himself for the land in controversy.

2. ADVERSE POSSESSION—*Effect—Vesting Title.*

   Seizen or possession of land, adverse to all, for the length of time of the statutory bar to real actions, vests title in the party who has been so possessed. It makes recoverable legal title.

3. EJECTMENT—*Evidence—Title of State.*

   A plaintiff in ejectment who relies upon title by adverse possession need not affirmatively prove that the state has no title to the land.

4. ADVERSE POSSESSION—*Presumption of Grant.*

   Where there has been a holding of land with all the essentials of adverse possession for the period of the statutory bar to real actions a grant is presumed.

5. PRESUMPTION OF GRANT.

   So far as the principles herein enunciated conflict with the sixth point of the syllabus in *Witten* v. *St. Clair*, 27 W. Va. 762, the latter is disapproved.

6. QUAERE.

   Does statute of limitations run against state as to its lands? See note by Judge BRANNON.

Error to Circuit Court, Lewis County.

Action by John S. Riffle against R. L. Skinner. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Linn & Bland,* for plaintiff in error.

*W. W. Brannon* and *E. A. Brannon,* for defendant in error.

ROBINSON, PRESIDENT:

In this action of ejectment, the plaintiff, by the verdict of a jury, has judgment for a fee simple estate in 153 acres of land. In seeking to overthrow the judgment defendant insists that

the evidence established more than ten years adverse possession on his part, thereby barring plaintiff 'from recovery against him; and that, at any rate, plaintiff did not show such title in himself as that upon which he could recover. ·

Plaintiff relies upon a deed from Camden and Arnold, made to him in 1875, and complete possession thereunder since that time. Defendant relies upon a deed from another source, made to him in 1890. Each deed clearly calls for a tract adjacent to that called for in the other. They each call for the line of an old survey which, properly located, is the division line between them. Upon the faces of the two deeds there is no conflict. Looking to the deeds, there is no overlap or interlock. But in actual contest there is a disputed strip. The dispute has arisen because of different claims as to the proper location of the line of the old survey separating the tracts. Plaintiff insists that defendant has crossed over this division line and encroached upon his land. To oust him therefrom this suit was instituted.

Neither party relies upon perfect chain of paper title; both rely upon possession. Plaintiff says that his possession of land under his deed has extended to the true boundaries called for by that deed and has embraced the land in controversy, and that defendant has not had such possession of the disputed strip as would bar plaintiff from its recovery. Defendant says that his deed calls for the strip; and that, in any event, he now owns it by reason of more than ten years adverse possession.

The jury found that plaintiff's claims 'were supported by the evidence. The evidence as to the true location of the line, possession by defendant, the character of that possession, and other material matters relating to the issue, is conflicting. It is oral testimony of witnesses in the presence of the jury. In such case we have no power to invade the province of the jury by disturbing the verdict on the alleged ground that it is contrary to the evidence.

Has the plaintiff shown a title sufficient for recovery? The jury has affirmed by its verdict his claim that he has been in possession for 27 years, under color of title, adverse to all others. Is that finding of fact such a showing of title as will enable plaintiff to recover in ejectment? The plaintiff must recover on the strength of his title alone. In ejectment this proposition is fundamental. But what are the essentials of strength of title

sufficient to support ejectment? What makes a case for a plaintiff in ejectment? Must he affirmatively, as is sometimes loosely said, show title against all the world? If he must do so, it is strange practice that calls upon him so to negative the validity or existence of all other claims to the land but his own. The plaintiff, to recover, must show a legal title to the land. He must prove a legal title that has the strength to prevail over the title relied upon by defendant or proved by defendant to be outstanding in a third party. But only to that extent is the burden of showing title upon the plaintiff. He is not obliged to eliminate from consideration the possibility of a better title than his, unless the defendant presents it. Ejectment is a contest between the parties, as is any other action. The action binds only the parties to it. And when the plaintiff proves a title in himself, having the elements of strength sufficient for recovery, he may rely upon it and recover thereby unless the defendant shows that a better title exists either in himself or another. That he must show title against all the world means simply that he must show a legal title better than any other presented against it on the trial. It does not mean that he must do more affirmatively than show that he has a recoverable legal title to the land in controversy.

The expression that a title against all the world must be shown by a plaintiff in ejectment has evidently led to a belief by some that it is always incumbent on the part of such plaintiff to show that title has been granted by the commonwealth. The rule that title must be traced to the commonwealth has been carried to an extent that is not justified by reason nor by the purpose for which such tracing is ever required. In ejectment, it is required that the plaintiff trace title to the commonwealth if he relies alone on paper title. But, the rule of tracing title to its original fountain, the sovereignty of the soil, properly pertains only to a showing of paper title—a reliance on paper title alone. Even in such case, presumptions may be established which sometimes suffice to do away with the showing of a complete chain of documents. It must be so, otherwise valid titles and vested rights will be lost by long lapse of time incurring changes which produce the loss of records and evidence. So where a plaintiff in ejectment relies wholly upon paper title, upon deed without possession, he must show the chain taking

the title to its origin. It requires this showing to vouch strength in the title and to make it a *prima facie* legal one sufficient for recovery. But where a plaintiff can rely on other than a paper title it is not so. He need not trace title to the commonwealth. Where there is seizen or possession under claim of title there is always presumption of title. Tyler on Ejectment and Adverse Enjoyment 78; 3 Wigmore on Evidence, section 1779; *Teass* v. *St. Albans,* 38 W. Va. 1. "So the uninterrupted enjoyment of property or privileges for a long space of time raises a presumption of legal right." Starkie on Evidence (10th Amer. Ed.), marginal page 75. And when that seizen or possession is of the length of time to bar recovery, it presumptively vests title in the party who has been possessed. It makes good legal title upon the showing of which one may recover. It makes a *prima facie* showing of title. True it may not be sufficient to avail against all the world, but it avails in ejectment until the defendant overthrows it. There has been a failure in some of the decisions to distinguish between the essentials of proof of paper title and the essentials of proof of title by the presumption arising from long continued seizen. It suffices, however, to enunciate true principles without particularly referring to all the instances in which they have been overlooked.

In the case under consideration, it is maintained that one may not recover in ejectment upon proof of adverse possession, unless he shows that at some time the state granted the land or that there has been that which would cause a transfer of the state's title under Art. XIII of the Constitution—ten years adverse possession and payment of the taxes for five years. In support of this contention we are cited to *Witten* v. *St. Clair,* 27 W. Va. 762, which we admit sanctions it. But such view seems unreasonable, unwarranted, and unsound. Shall a plaintiff in ejectment be required to show more than the affirmative of the legal title upon which he relies? Shall he be required to provide in proof against the mere contingency that the state may not have granted the land or that the state may have title by forfeiture? What if there has been an actual grant, the title resting on which has never been forfeited? Why cause the plaintiff to prove all the essentials of a transfer to him under the Constitution when there could be no transfer if the state had no title? More reasonable would it be to require him to show

that title is actually out of the state. Yet suppose that the state, or the Commonwealth of Virginia, never at any time had title, that the land was granted before the existence of either, as may be true in counties where ancient grants from the crown or lord of the fee were made before our independence. In such case shall plaintiff, though resting upon long and good adverse possession, be required to delve into the secret recesses of the past to find such grant, or, failing to find it, be required to prove the essentials of a transfer under our Constitution which could not have taken place because such granted title was actually outstanding and not forfeited? In following such a rule for proof of title, one may be permitted to rely on a taking of the state's title that never occurred. If there is an outstanding title in the state, why should not the defendant show it? State titles are rare at this late day compared with the great mass of individual titles existing in our now old settled country. Why attach such importance to a grant from the state, disregarding all presumption of grant that must exist by the very nature of things? The state is not a party to the action, nor bound by it. Why not as well require a plaintiff who relies on perfect chain of paper title, to prove that the state has not acquired title by forfeiture for non-payment of taxes? Title in the state by forfeiture is more probable than original title in the state. Yet it is universally the rule that the defendant must show outstanding title by forfeiture. The plaintiff, we say, by the showing of adverse possession for a length of time which under the law vests one with title, sufficiently negatives all outstanding title and raises in his favor the presumption of a grant. He makes a *prima facie* case. It remains for the defendant to overthrow it. "Where an adverse possession is shown, the burden is on the true owner to show why it should not be operative against him, such as that he was within some exception contained in the statute, or that during a necessary period of the possession the title to the land was in the government." 2 Enc. L. & P., 576.

It is elementary law that where there is possession there is usually presumption of title. 3 Washburn on Real Property, section 1945. That presumption is a legal one; it suffices for proof and avoids the necessity of evidence until it is rebutted.

4 Wigmore on Evidence, section 2515. And the presumption of title in an adverse holding of land for the statutory period that bars other claimants therefrom surely suffices to take the place of proof on the part of a plaintiff in ejectment, if he sees fit to rely on it and take the risk of its being rebutted. There can be nothing unreasonable in this view; it is plainly consistent with the force of legal presumptions in the trial of other actions. This presumption of title that accompanies an adverse holding necessarily implies a grant originally from the sovereignty, since the title presumed must have that origin. And since a grant from the state is presumed, the claim that the statute of limitations does not run against the state unless payment of taxes is shown is immaterial. That question need not be considered. Again we say, the state is not a party. The contest is between individuals. "Title may be acquired by grant or by adverse possession. The latter is a prescriptive title or right presupposing a valid grant, and deriving its strength and virtue from the statute of limitations, barring the remedy." *Camden* v. *Lumber Co.,* 59 W. Va. 157. Grants from the commonwealth long ago were presumed, and such presumptions given force. Since our country is now completely settled and greatly prosperous, there is certainly the more reason for presuming that title is not still in the state. In 1808, more than a century ago, Judge Tucker wrote: "Presumptions in favor of long and peaceable possession, that there has been a grant, must, at no very long period hereafter, be absolutely necessary to be made, on almost all occasions, in consequence of the operation of our law of descents." *Archer* v. *Saddler,* 2 H. & M. 370. In the same case, Judge Roane mentioned, in referring to the reasonableness for the recognition of presumption that the state had not title, the improbability that at that time and in the settled section from which the case arose lands should be vacant. How much more the reason and necessity for applying such presumption in this day of settlement and progress! How much greater now the improbability that land is vacant or unappropriated; yea, or even forfeited for non-payment of taxes!

The presumption of title that arises from adverse possession of land under claim or color of title, embodying as it must a presupposition that the title has left the state, is either over-

looked in *Witten* v. *St. Clair, supra,* or at least therein given no credence. Yet such a presumption of grant and title when there has been adverse possession for the statutory period sufficient to bar recovery, operating to support plaintiff's title in actions of ejectment, has long been recognized in the law of the Virginias. It was clearly observed in the old Virginia law relating to ejectment and the writ of right. The essentials of a showing of title on the part of a plaintiff in ejectment in this. day is not different from that necessary when ejectment and the writ of right were separate actions, except that statutes have gradually shortened the time of the adverse holding necessary to be shown, the running of which will cause the presumption of title to be available. This shortening of the time has been but an aidance of the presumption of title. It has made the presumption to be available earlier than formerly. As the country has become more populous and titles more settled good policy has dictated a shorter period for giving force to adverse possession and the presumption which springs therefrom. As to the old action of ejectment, in Tucker's Com., Book 3, page 176, it is said: "In support of his title the plaintiff may either prove an uninterrupted and peaceable possession by him and those under whom he claims for fifteen years anterior to the ouster, which itself is sufficient to enable him to maintain ejectment, or he may deduce his title from the commonwealth by a regular and unbroken chain;—though if he and the defendant both claim under the same remote title, it will be unnecessary for him to go farther back than that common source." And, as to the writ of right, on page 185, the author says: "The demandant may establish his claim either by exhibiting a connected chain of title from the commonwealth down to himself, or by relying on the length of possession of himself and those under whom he claims. In the first case the chain of title must be perfectly connected and unbroken; beginning with the commonwealth's patent, and brought down to the demandant, by deed, devise, or descent, from one owner to another, in regular succession. In the latter case he proves that he himself, or some person under whom he claims, had enjoyed an uninterrupted possession for fifty years; and if he rests upon the uninterrupted possession of another person, he traces the title, by deed, devise, or descent, from such person to himself, and produces the instruments and

evidences 'which establish such right." Note distinctly from this
text that the title need be traced only to the sufficient adverse
possession—that it need not be traced to the state when sufficient
adverse possession is found. Judge Tucker was writing at a
time when the statutory bar to .ejectment was fifteen years and
to the writ of right fifty years. Now the actions are merged,
and the time of the bar is ten years. Time and settlement have
made it beneficial to decrease the time to that period. And the
ten years now is as effective in aid of a plaintiff in ejectment
as was fifteen years or fifty years when Judge Tucker 'wrote.
The learned Justice Story said: "In general, it is the policy
of courts of law to limit presumption of grants to periods
analogous to those of the statute of limitations, in cases where
the statute does not apply. But where the statute applies, it
constitutes, ordinarily, a sufficient title or defense, independently
of any presumption of a grant, and, therefore, it is not generally
resorted to." *Ricard* v. *Williams,* 7 Wheat. 110. The presump-
tion of title now follows. the showing of an uninterrupted pos-
session for ten years, just as it followed the showing of such
possession for the longer periods required by the older laws.
"The time within which such presumptions are to be indulged
seems to be now fixed in analogy to the highest bar to real
actions." 22 Am. & Eng. Enc. of Law, 1290. Even earlier than
the time of Judge Tucker's last mentioned writings, in 1814, the
great Chief Justice Marshall, himself a Virginia lawyer, in the de-
cision of a case arising in Virginia under the law of that common-
wealth, said: "By the laws which govern this case, a possession
of thirty years under some circumstances, and of fifty years,
under any, constitutes a title against all the 'world." *Alexander*
v. *Pendleton,* 8 Cranch 462. And now, in this late day, after
progress, development, and settlement of which the founders
never dreamed, causing salutary changes in the statutory period
of bar, we say that proof by a plaintiff of ten years uninterrupted
possession of land is presentation of title against all the world,
which in the action can only be defeated by evidence on the
part of the defendant. "The statutes of limitation are em-
phatically statutes of repose, and are dictated by a wise policy,
founded upon the presumption against him who has unreason-
ably delayed the assertion of his demand, and in favor of him

who has long exercised the dominion of owner." *Taylor* v. *Burnsides,* 1 Grat. 187.

Does not the presumption of a grant from the sovereignty prevail in that rule of ejectment law, so well observed by us, that a plaintiff need only trace his title to a source common to that under which the defendant claims? In such case it is never required that plaintiff show that the state or sovereignty parted with the title in some way. Defendant is estopped to deny the title, since he also claims under it. Does not that estoppel rest on a presumption—that the title has left the state? Yet the decision in *Witten* v. *St. Clair, supra,* does not seem even to except such case. Under that decision, if strictly construed, a plaintiff, relying on a source of title common with that of defendant, must nevertheless show that sometime the state granted the land or provided against the mere possibility that it did not grant it by showing that, if not granted, title passed by transfer under the Constitution. It would seem to require every plaintiff in ejectment, at all hazard, to show affirmatively that the title is out of the state, or to guard against the remote possibilty that it may be still in the state. A requirement of that kind is not consistent with reason. It, also, must be based on a presumption—that the state may have title. That presumption rests on a thing improbable. Why not recognize the more probable presumption, arising from long adverse possession and the infrequency of state titles in this day, that the state has no title? The latter presumption is sanctioned by law. *Mathews* v. *Burton,* 17 Grat. 312; 1 Greenleaf on Evidence (15th Ed.), section 17; 22 Am. & Eng. Enc. of Law, 1289; *Fletcher* v. *Fuller,* 120 U. S. 534. In Lawson on Presumptive Evidence, throughout chapter XVIII, there is an enlightening exposition of the subject of presumptions in the law of real property.

Adverse possession of land for the period of the statutory bar to real actions is a *source of title* upon which one may recover in ejectment. Plaintiff need only trace his title to such source. If that adverse possession has not been effective as against the state, by reason of a failure of the holder to pay taxes, whereby his claim was forfeited, or otherwise, the defendant must show it. The presumption that there has been a grant and that taxes have been paid, in other words that there is unforfeited title,

shifts the proof to him. "The statute of limitations is not only a defense which the occupant may interpose in bar of the plaintiff's action for land, but it also constitutes a source of title to the occupant, to which he may appeal to sustain an action of ejectment brought by him as plaintiff, whether against the rightful claimant or a third person, provided the occupant's possession has been such as will cause the statute of limitations to have run in his favor." 2 Minor on Real Property 1021. "Under our statute, such possession for ten years gives perfect title, not a mere right to continue the possession, not a title to be lost by mere temporary abandonment of actual possession. It is not only a defensive title, but one which will sustain an action of ejectment as effectually as a deed or a grant. If, after title is acquired by adverse possession, the holder thereof loses the actual possession, he may maintain an action to regain it just as if he had a perfect paper title." *Summerfield* v. *White*, 54 W. Va. 322. "The statute itself confers and invests title in the occupant as effectually as does descent, devise, or grant, so that he may not only defend, but if afterwards another enter upon the land, he may maintain ejectment on the title conferred by the statute, though he have not the scratch of a pen to show title." *Parkersburg Industrial Co.* v. *Schultz*, 43 W. Va. 475. There is no conflict in a multitude of authorities upon this subject. The principles enunciated in them are plainly a recognition that in title by adverse possession a valid grant is presumed, and that without such presumption the statute of limitations cannot have that full force and effect that was intended for it so that it might bring about the repose and peace of society. 2 Minor's Inst. (4th Ed.) 574; Hogg's Pl. & Forms, section 35; *Garrett v. Ramsey,* 26 W. Va. 345, and other cases. Pertinent, upon the whole, are the remarks of the chancellor in the South Carolina case of *Sims* v. *Aughtery,* 4 Strob. Eq. 119 : "These legal presumptions, by which conflicting claims and titles are set at rest I have endeavored to show are natural and necessary. They spring spontaneously out of the institution and relations of property. As to the precise time at which they arise, each independent community must judge for itself. * * * * Twenty years continued possession will raise the presumption of a grant from the State, of deeds, wills, administrations, sales, partitions, decrees, and of almost anything that

may be necessary to the quieting a title which no one has disturbed during all that period."

In this case, the establishment by evidence of all the essentials of adverse possession for a period of 27 years, under color of title by the deed which plaintiff produced, and the presumption of title arising therefrom, made a case upon which plaintiff could recover, since it was not successfully met by defendant. There is no error in the judgment; it will be affirmed.

*Affirmed.*

BRANNON, JUDGE, *(concurring):*

I concur in the decision and I approve the opinion written by Judge ROBINSON. But this case having involved much discussion in conference, and the counsel for the defendant relying with great confidence upon the fact that Riffle did not show title back to the state, I was led to examination of that point and some others upon which I desire to express an opinion, and therefore file this note. Before discussing these points I remark that the case turns on them, because as to boundary and possession the verdict covers them. The jury has fixed the line of the Camden 1,200 acre grant as claimed by Riffle, and in so doing has fixed the line between Riffle and Skinner, because their deeds both call for the Camden line. Riffle's land is on one side, Skinner's on the other side of that line. The verdict upon a large amount of oral evidence thus denies that Skinner's deed covers an inch of the contested land. As their tracts by their deeds are coterminus, there is no interlock. *Robinson* v. *Sheets,* 63 W. Va. 394. The verdict also negatives adverse possession in Skinner. Skinner's deed not covering the disputed land, he has a mere "claim" to it without color. He must then have actual occupation or enclosure. There is much and conflicting evidence on that point. The jury found the fact to be that Skinner could not claim the disputed land by possession.

Skinner's counsel rely for reversal with great confidence on the fact that Riffle does not trace title back to the state, and claims that as plaintiff in ejectment he must therefore fail. Must a plaintiff in ejectment trace his title back to the state? The general impression is that he must. How it originated as applicable to all cases I do not understand. It is clear upon reason and authority that one in possession can retain it until

expelled by superior right. Where the plaintiff claims purely on *paper* title he must go back to the state in showing his title, unless there is a relation of tenant, or both claim under a common source or other instance of estoppel. I say that if the plaintiff rely only on paper title he must show a right given by the state and trace his title therefrom. If he thus shows a good title, he may recover without showing that he has ever had possession. *Taylor* v. *Burnside,* 1 Grat. 169. Further authority on this proposition would be useless. But though a plaintiff in ejectment does not go back to the state, if he has had actual possession under color of title, claiming in his own right, for the period fixed by the statute of limitations, he has title against the world, and upon that title may sustain ejectment. 10 Cyc. 484; 15 Am & Eng. Ency. L. 30. The large collection of cases in 10 L. R. A. (N. S.) 404, will abundantly show this. It is old, old law that actual possession of statute length gives title. Blackstone, Book 3, 195, says: "So that possession of land in fee uninterruptedly for three score years is at present a sufficient title against the whole world; and cannot be impeached by any dormant claim whatever." "An adverse possession for twenty years is not only an available defence to the party whilst he continues in possession, but it gives him (unless affected by some of the exceptive provisions in the statute of limitations) a complete possessory right to the lands, and is a sufficient title to enable him to maintain an ejectment against any person who ousts him after the expiration of twenty years." Adams on Ejectment 77. Tyler on Ejectment says on page 88: "The statute of limitations therefore may properly be referred to as a source of title, and is really and truly as valid and effectual as a grant from the sovereign power of the state." Riffle has a deed constituting color of title and possession under it for twenty-eight years, and by the statute this gives him title under the rule above stated and everywhere held, that when the statute applies it takes away the title of the owner, though he be the true owner, and not only deprives him of it, but confers that same title on the one filling the statute, though in his own right he had an inferior title. "The statute confers a legal title enabling one, not only to defend, but to maintain ejectment or other action on its strength." This is our statement of the

law in *Parkersburg Indus. Co. v. Schultz,* 43 W. Va. 70. I
think I may say that proposition is sustained by the authorities
there given and many others. *Hall* v. *Webb,* 21 W. Va. 318;
*Adams* v. *Alkire,* 20 *Id.* 480; *Adkins* v. *Spurlock,* 46 *Id.* 139.
*Summerfield* v. *White,* 54 W. Va. 312, distinctly states the
efficiency of a title acquired by possession to sustain the action
of ejectment. We do not question the rule that a plaintiff
in ejectment must recover upon the strength of his own title,
not upon the 'weakness of that of his adversary. This is not
our question. Though we admit that rule, then comes the
question as to how he shall show his title, and we say that he
may do so by adversary possession for the statute period under.
color and claim of title. We say that that is a grant given
by the law on which the owner may maintain ejectment, and he
need not trace his title in such case back to the state. Old Vir-
ginia cases fully sustain this proposition. *Moody* v. *M'Kim,*
5 Munf. 374; *Kinny* v. *Beverly,* 2 H. & M. 318. We could hardly
cite a case more strongly sustaining this proposition than *Adams*
v. *Alkire,* 20 W. Va. 480. The plaintiff held possession under
a deed. He showed no grant from the state. It did not appear
that the land had ever been granted from the state. It did
appear, however, that the state granted the land to another
after the plaintiff's possession began, and the defendant claimed
under this state grant. The plaintiff showed no grant from
the state, but only a deed, as is the case with Riffle; but the
court allowed him to recover on possession alone, though it
appeared that the state had never granted the land until it
granted it to those under whom the defendant claimed. I do
not know whence came the idea that in *every case* the plaintiff
must trace title back to the state. The case just cited repels
that idea, as do the two old Virginia cases above cited. *Middle-
ton* v. *Johns,* 4 Grat. 129, does not recognize, but denies, that
rule; for it allowed a recovery by a person having possession
more than fifteen years under color of title without tracing
title to the commonwealth, expressly dispensing with that. In
fact, we can say upon the authorities that 'without possession
for the statutory period a person in actual, peaceable possession,
which is invaded by one not having superior title, may maintain
ejectment upon his possession. Many cases collated in 10 L.
R. A. (N. S.) 404, and 22 *Id.* 1100. This is because actual

possession has been from the earliest times and is to-day *prima facie* evidence of title, until a better is shown. *Tapscott* v. *Cobb,* 11 Grat. 172, is an instance. Approved in *Miller* v. *Williams,* 15 Grat. 218. *Mitchell* v. *Carder,* 21 W. Va. 277, states principles notably sustaining this. Mr. Justice Story said, "Undoubtedly, if a person be found in possession of land, claiming it as his own in fee, it is *prima facie* evidence of his ownership and seizin of the inheritance." *Ricard* v. *Williams,* 7 Wheaton, p. 105. Many authorities given in Sedgwick & Wait's Land Titles 546 sustain this old law. If we be in error in other views, this alone calls for recovery for Riffle. I do not discuss the question whether Riffle's long possession under color would run against the state and transfer its title to him under Code 1906, chapter 35, section 5, saying every statute of limitation shall run against the state. If it applies, that would give Riffle state title. So, certainly as between Riffle and Skinner Riffle's possession would entitle him to a recovery. Just here I will note that Skinner's counsel rely on *Witten* v. *St. Clair,* 27 W. Va. 762. It did not allow recovery on the strength of possession. In this respect it cannot be sustained. It is a departure from innumerable authorities, and is flatly against *Adams* v. *Alkire,* 20 W. Va. 480, and Virginia cases above cited. The facts in *Witten* v. *St. Clair* entitled the plaintiff to recovery on possession; but that right is not mentioned, but it is erroneously held that the plaintiff must trace title to the state, ignoring title by adverse possession. *Ronk* v. *Higginbotham,* 54 W. Va. on page 145, says that the plaintiff failed to show right of recovery since he failed to connect with the state. That was proper in that case as the plaintiff's case rested on paper title, not possession. *Summerfield* v. *White,* 54 W. Va. 311. It is cited by Judge Williams to sustain the rule that the plaintiff must deduce title from the state. It was not involved in the case; and any one reading Judge Poffenbarger's opinion on page 321 will see that he applied this rule only to cases where the plaintiff rested on paper title. In speaking generally of the requisites of title in ejectment, he did say that the plaintiff "must make out a perfect title showing a grant from the state", but in immediate connection he said: "No length of claim of *paper* title which does not reach the sovereignty of the soil is sufficient, *of itself,* to constitute *prima facie*

evidence of title." True, and supports the principles which I have stated above. And take the syllabus, point 5, holding that actual possession under color of title for ten years will give sufficient title to recover. How can that be, if grant from the state is wanting? I can find no source for the error that plaintiff must always show title from the state. He must, if he relies only on paper title. I dislike to impugn *Witten* v. *St. Clair;* but in the respects specified it is unsound and against a mountain of law. This point relates only to practice, not substantive law of title, and therefore I have less hesitation in dissenting from a decision of one of the ablest judges known in Virginia or West Virginia.

I also concur on the ground on which the opinion written by Judge ROBINSON rests it, presumption of grant at some past time, after twenty-eight years of possession. I think the tendency, if not the settled law, at this day is to raise such presumption at some time in the past, maybe before the present constitution, to quiet possession after the longest time fixed by limitation to recover land; but can safely say it is so after twenty years possession. Authorities on this subject: Lawson on Presumptive Evidence, 475; *Archer* v. *Saddler,* 2 H. & M. 370; *Mathews* v. *Burton,* 17 Grat. 312; *Fletcher* v. *Fuller,* 120 U. S. 534; 39 Amer. Dec. 658, 686; 70 Amer. Dec. 529, 540; 22 Am. & Eng. Ency. L. 1290. *U. S.* v. *Chaves,* 159 U. S. 452, is strong to support such presumption after twenty years possession. No matter whether the subject be corporeal or incorporeal. *Cornett* v. *Rhudy,* 80 Va. 710. This was held as far back as 1822 by the United State Supreme Court. *Ricards* v. *Williams,* 7 Wheaton 59. See notes on this case. U. S. Sup. Ct. R., 5 Law. Ed. p. 127-8. In *Bolling* v. *Mayor,* 3 Rand. p. 577, Judge Carr, a great lawyer, concedes that when the years assigned by the statute have passed a grant is presumed. This is a fiction of law, true; but it is one which is made by law for quiet of title. I am disposed to think it conclusive, though some say it is only *prima facie.* Nothing is shown to the contrary in this case, if it could be shown. No grant to another, no sale or forfeiture for taxes.

But I go further. When it is demanded that a person suing in ejectment who has had possession actual for the statutory period under color of title, claiming the land as his own, shall

trace title back to the state, I reply that he has the title of the state by force of that kind of grant made by the statute of limitations, a statutory grant, a grant conferred by that statute. The state is just the same for this purpose as a private owner; for as to its land owned as a proprietor, not used for governmental purposes, it is an individual subject to the statute, for the reason that a statute says, "Every statute of limitations, unless otherwise provided, shall apply to the state." Code 1906, chapter 35, section 20. Until the Code of 1868, going into effect 1st April, 1869, that was not the law, because until then the rule was, *"Nullum tempus occurrit regi"*, no time runs against the king, and this applied to a state. *Hall* v. *Webb,* 21 W. Va. 318, 321. But that statute changed the old rule as to land not used for governmental administration. As to property so used, it is not under the statute. *Ralston* v. *Weston,* 46 W. Va. 544; *Foley* v. *County, 54 Id.* 18, 28. But we have decided as to property not so used that the state is subject to limitation because of that code section. *State* v. *Mines,* 38 W. Va. 135; *State* v. *Sponaugle, 45 Id.* 415; *State* v. *Harmon,* 57 *Id.* 447 (pt. 17). I notice too that the same is held in *City of Wheeling* v. *Campbell,* 12 W. Va. on p. 68. Therefore, by limitation Riffle acquired state title and could recover upon it. I notice that in *Witten* v. *St. Clair,* 27 W. Va. 762, there is a departure not only from the principle everywhere held that as between individuals the statute of limitations will confer title on which a plaintiff may sustain ejectment, but also a disregard of section 20 above cited. It is notable that the opinion in that case speaks of the rule that time does not run against the state as still in force, when section 20 of code, chapter 35, had been in force sixteen years. In *Hall* v. *Webb,* 21 W. Va. 318, the same ignorance of the new statute was shown by the same able judge who wrote the opinion in *Witten* v. *St. Clair.* He said that the statute of limitations had no reference to the state. He had in mind only chapter 104. I attribute this to inadvertence, want of knowledge of section 20, chapter 35. The state has title to land, and right of entry as incident to title. If it be in possession of another, the state may sue. It is not right that land in long possession of a person under color of title should not avail him against the state. The new statute is right. If it be said that the Constitution, Art. 13, section 3,

prescribes the way in which the land may be acquired, requiring payment of taxes, I reply that that is *one* way of acquisition, that is by *enurement*, based on possession and payment of taxes, but there is another mode under the law, by limitation. When one is in possession, the statute running in his favor, the suggestion is made that he must also show payment of taxes in addition to possession. They are different modes of getting title. To get it by limitation the party must have color of title and *claim* adversely; whereas, he may get title under the Constitution by possession and payment of taxes, though he never made adverse claim against the state. I say that if he has possession you cannot defeat its effect under the statute by demanding payment of taxes. Will you presume that he has not paid? Rather, if there is to be any presumption, will it not be that he did pay? You must show sale for taxes or forfeiture for non-entry. If the state proceeds to sell as forfeited, she must show forfeiture. Shall either the state or an individual say to one in possession for the statute period that he must show payment of taxs to show title in ejectment? That has never been required to get the benefit of the statute. True, it may be shown that the title acquired once by the statute has been itself forfeited, or forfeited before the statute has run out; (*Parkersburg Indus. Co.* v. *Schultz,* 43 W. Va. 470) but he must show it, just as he may and must show any other outstanding better title in another, if he has it not himself. Point 6 of *Witten* v. *St. Clair* is wrong in requiring payment of taxes in addition to possession to get the benefit of such possession. Will any one doubt the power of the Legislature to say that one holding possession under color of title for ten years shall get good title against the state, unless you say that Art. 13, section 3, and Code, chapter 105, prescribe the *only* ways of acquiring state title? They are designed to prescribe two ways of getting state title, but surely cannot be held to deny the Legislature power to give peace and rest of titles to whose holding for the years fixed by that great statute of public policy and repose of homes, the statute of limitations. Thus I agree to the decision also because of that statute.

Some time after writing the above I add some additional matter in support of the contention that the statute passes the title of the state. I will cite the South Carolina case of *Busby*

v. *Florida,* 23 S. E. 50, dispensing with the requirement that a plaintiff in ejectment must show a state patent when the statute has run its time against the state. The only argument which ever made me hesitate as to this position, (and this suggests this addition to my note) is that the Constitution, Art. 13, section 3, prescribes how the classes of state lands in it specified shall be given gratis to the persons in it specified, and the question arose whether state title to those lands could be passed in any other way. Subsequent reflection has confirmed my opinion. I contend that the Constitution does not take from the Legislature power to otherwise pass state title. Transfer by section 3 is not the sole exclusive mode. The Legislature has full power to do this unless plainly prohibited. We must not, by mere implication, so construe the Constitution as destroying a sovereign power in a state Legislature. But in addition to this fundamental rule that the Legislature has a right to prescribe the mode of passing state title, and to show that not only the Constitution does not destroy this right, but, on the contrary, recognizes or even grants it, I cite the words of the Constitution. Observe that section 3 transfers title to such land only as had not been already *"redeemed, released or otherwise disposed of,* vested and *remaining* in this state." But suppose the state has already in some other mode transferred her title, for instance, given it to one under the statute of limitations. Then it is not *"remaining"* in the state to be transferred by section 3, because it has been *"otherwise disposed of"*. This recognizes power in the Legislature to "otherwise" dispose of land; we may say grants that power. Section 4 of Art. 3 is consistent with this, as it says that the classes of lands specified in section 3 "not redeemed, released, transferred or otherwise disposed of, the title whereto shall remain in this state", shall be sold for the school fund. If "transferred" they are not to be sold; if "otherwise disposed of", they are not to be sold. Now, if the Legislature sees proper, for repose of titles, and the settlement of the country, to give a man in possession ten years her title by her statute of limitations, has not the Legislature such power under both sections 3 and 4 by the words "otherwise disposed of"? Those words give such power. The Legislature has made a statutory grant or patent by that statute. In *State* v. *Jackson,* 56 W. Va. 558, and

*State* v. *King,* 64 W. Va. 446 (pt. 20), we recognize the power of the Legislature to pass state land in such manner as it may deem promotive of public interest.

POFFENBARGER, JUDGE, *(concurring):*

While there are authorities, holding a grant of land by the state cannot be presumed, if such grant is inhibited by a statute, I think Judge ROBINSON's opinion correctly states, and properly applies, a general principle of law. The constitution of this state inhibits entry by warrant on lands, Art. XIII., section 2, and there is no statute, authorizing the issuance of patents; but sections 3 and 4 of Art. XIII of the Constitution and chapter 105 of the Code provide for disposition of the state's title to all lands, forfeited, escheated, waste and unappropriated and purchased at sales made for non-payment of taxes and become irredeemable; and the dispositions so made are equivalent to express grants. Logically and by parity of reasoning, therefore, a presumption of title arises in litigation between individuals from adverse possession on the part of one of them for a period of time long enough to bar an action against him under the statute of limitations. The unnecessary burden it would impose upon such party, to require him to deduce paper title from the state, or show it to be outstanding in a third party, abundantly justifies the interposition of the legal fiction of a grant or the equivalent thereof, and thus casts upon his opponent the burden of showing loss of this presumptive title by forfeiture or sale for non-payment of taxes. It is an eminently just and fair rule of procedure.

My real purpose in writing this note, however, is not to strengthen the position taken in the opinion, adopted by the majority of the Court, but to direct attention to the specific ground upon which the decision is based. As is intimated in the opinion, it was suggested in this case that the statute of limitations runs against the state in respect to forfeited, escheated and waste and unappropriated lands. Having investi-. gated that question to some extent, I wish to preserve here certain impressions and suggestions applicable to the subject. At present, I am of the contrary opinion. Impliedly the provisions of section 3 of Article XIII of the Constitution invite

occupation and settlement of these lands, by transferring the titles, acquired by forfeiture, escheat or purchase at sales made for non-payment of taxes, and the title to waste and unappropriated lands, not redeemed, released or otherwise disposed of, to persons who actually occupy them and pay taxes thereon. This seems to make all such entries permissive and not hostile, and this view is emphasized by the absence of any provision, in either the organic or statutory law, for actual possession of, or dominion over, such lands on behalf of the state. All these laws deal exclusively with the titles to such lands, and leave the subject of possession thereof wholly untouched, except in so far as they impliedly extend permission to individuals to settle upon, and acquire the titles thereto, before they are otherwise disposed of. No statute authorizes any person or officer to sue for the possession of such lands, or make any entry thereon, for or on behalf of the state. No right of action for the possession thereof is created or given by statute or other positive law, and the statute of limitations, when applicable, never runs until after the accrual of a right of action. To set it in motion, in respect to land, there must be a disseizin, an entry and ouster against some person, having the right of possession and the power to sue for redress of the wrong. As the state has deputed no person to hold or defend the possession of such lands for her, or to vindicate her title by the institution of any possessory action, it seems clear to me that there cannot be, in such case, either a disseizin or the accrual of a right of action for the possession. It may be that the state could make such provision, but she has not done so. She may have potential, but not actual, power to enter upon and sue for the possession of such lands. In my opinion, the test is actual power. The existence of a right of action in fact and in law is, I think, a prerequisite to the application and running of the statute of limitations. Just how much latitude the Constitution allows to the legislature, respecting such lands, is an interesting question. In general, the Constitution prescribes a method of disposing of them. Besides specific methods named, a general power is conferred upon the legislature to release lands from forfeiture, but not to provide for the permanent holding, or appropriation, thereof to any governmental purpose. The intent of the framers of the constitution seems to have been to force these lands out

of the hands of the state into private ownership, and an incident of one of the prescribed methods of effecting this result is the permission given to individuals to enter upon and occupy them. Hence, it may be that the legislature has no power to do more than facilitate the work of getting such titles out of the state, and could not authorize any officer or other person to take possession of such lands or sue for the possession thereof on its behalf.

The position I take does not nullify section 20 of chapter 35 of the Code. There are many other instances in which rights of action accrue to the state and are barred by time.

WILLIAMS, JUDGE, *(dissenting):*

This action grows out of a disputed boundary line which, when correctly located, is the dividing line between plaintiff and defendant; there is no interlock. Plaintiff claims under a deed from G. D. Camden, and another, dated March 1, 1885, as color of title, and proved possession thereunder for a period of more than 10 years, but did not prove that he had paid taxes thereon for 5 years. Defendant claims under a deed made by George J. Arnold, dated February 4, 1890, as color of title, and is now in possession of the disputed land. No grant from the commonwealth to any one for the land was shown; neither do the parties claim title from a common source.

I assume the following legal propositions to be so well established in Virginia and in West Virginia by judicial determination that their correctness will not be denied, viz:

(1). That plaintiff must prove, *prima facie,* good title to the estate which he claims in the land before he can recover.

(2). That the plea of "not guilty" casts the whole burden upon plaintiff to prove his title.

(3). That, when defendant is in peaceable possession, no defense is necessary to defeat recovery until plaintiff has proven title in himself, *prima facie* good.

(4). That, in Virginia and West Virginia, since the establishment of the United States Government, all titles to land, not theretofore granted, have their origin in the state, the only source of title.

An application of these fundamental principles to the facts in the present case would reverse the judgment of the lower

court. The state had never parted with its title, because the statute of limitations does not run against it so as to defeat its title to waste and unappropriated lands. *Shanks* v. *Lancaster,* 11 Grat. 110; *Levasser* v. *Washburne,* 11 Grat. 572; *Adams* v. *Alkire,* 20 W. Va. 480; *Hall* v. *Webb,* 21 W. Va. 318; *Witten* v. *St. Clair,* 27 W. Va. 762; *State* v. *Jackson,* 56 W. Va. 558; *Seekright* v. *Lawson,* 8 Leigh 458. See also opinion of Judge POFFENBARGER in *Lewis* v. *Yates,* 62 W. Va. at pages 594-595. Consequently it was necessary for plaintiff to prove payment of taxes, in addition to proving possession, in order to obtain the state's title under section 3, Art. XIII of the Constitution.

If the statute of limitations applied in favor of one in possession of the state's land, who failed to pay taxes, it would not only be inconsistent with section 3, Art. XIII of the West Virginia Constitution, but would also defeat the operation of the forfeiture laws made in pursuance thereof. For example, suppose D. has been in possession under color for 15 years or more, but has paid no taxes for any five of those years, and is sued in ejectment by P. who has never been in possession, but who claims under a deed from the commissioner of school lands, obtained after D. had been on the land for 10 years, and who has paid all the taxes since the date of his deed, can there be any doubt of P's right to recover? If D's possession alone could defeat P's recovery it would nullify section 3 of Art. XIII of the Constitution and prevent the transfer of the state's title to the one who had complied with the constitutional requirements, and would invest title in a person who had not complied with the constitution. Would the law aid D's possession by presuming a grant to have issued to him older than P's title? I think clearly not; and even if such presumption were allowed it could not help D's situation, unless he also proved that he had paid taxes. Because possession without payment of taxes will not prevent forfeiture; and if possession alone will not prevent forfeiture, pray, how can it create title? Title thus attempted to be created would die before its birth. Now, if D's possession, without payment of taxes, is not a good defense against P's action, how could D maintain an action of ejectment upon such possession? If it is not a good defense, surely it can not be a good title; and to hold it such would, in the case supposed, be so revolutionary as to make his

condition as plaintiff better than it would be if he were defendant. Where plaintiff claims by possession, under color, or claim, of title only, and it does not appear that the state has parted with its title to the land, either by grant prior to the formation of this State, or by sale and conveyance in the manner provided for the disposition of unappropriated lands, since state grants were abolished, he must prove more than his mere color and possession under it for 10 years. He must also prove payment of taxes for 5 years. If he proves payment of taxes for 5 years the Constitution divests the state of its title and invests it in such claimant. This question was expressly decided in *Witten* v. *St. Clair*, 27 W. Va. 762. The opinion of the Court in that case, written with great care by Judge SNYDER, is clear, logical and cogent, and has ever since, until now, been understood as correctly stating the law. I do not find that any other case, founded on a similar state of facts, has since then been before this Court for decision until the present one. That case has never, until now, been overruled either expressly or by implication. But, on the contrary, it has been recognized as law, and has been cited with approval in many later cases, viz: by Judge WARREN MILLER, in *Ronk* v. *Higginbotham*, 54 W. Va. 142, and in *Chapman* v. *Coal & Coke Co., Id.* 201; by Judge POFFENBARGER, in *Summerfield* v. *White*, 54 W. Va. 320, where he says: "The general rule is, that the plaintiff must recover on the strength of his own title. He must make out a perfect title showing a grant from the State." And cites *Witten* v. *St. Clair*, and other authorities, in support of the point; and on page 321 of the opinion he quotes approvingly from 10 A. & E. E. L. (2d Ed.) 481, the following: "No length of chain of paper title which does not reach the sovereignty of the soil is sufficient of itself to constitute *prima facie* evidence of title," which I think is unquestionably law, at least in Virginia and West Virginia. On the same page of the opinion Judge POFFENBARGER says that this general rule is subject to some qualifications, which I admit to be true, but he again cites *Witten* v. *St. Clair*, as authority for the exceptions. It is unnecessary to notice these exceptions; they have no application in the present case.

If plaintiff claims by paper title he must trace it back to the state's grant, to the source of title; and if he claims under

possessory title I assert that he must also connect himself with the state's title by proof of such facts as will show that the state has been divested of its title. The state is no less the fountain of title in one instance than it is in the other, and the burden on plaintiff to prove that his title comes from the only source of title, is as great in one case as it is in the other. He must recover on the strength of his own title. *Low* v. *Settle,* 32 W. Va. 600. The doctrine announced in *Witten* v. *St. Clair* was again approved, inferentially at least, in the later case of *State* v. *Jackson,* 56 W. Va. 558. In the opinion of the Court in that case, written by Judge BRANNON, pages 574-575, it is said: "It is incumbent on one seeking to take the benefit of the forfeiture of another's land under any one of the three classes provided for in Article XIII, section 3, of the Constitution, to establish facts which will bring him within one of those classes. He holds the affirmative; he is claiming title; he claims a grant created by the Constitution, and must prove the facts to give him that grant or transfer. It is claimed that the Jackson-Harrison title took the benefit of the forfeiture of the Landsburg land under the second and third class specified in the Constitution. Under either class the claimant must prove payment of taxes for five years." I think this is a correct statement of the law; it is what I contend should have been proved in the present case. It makes no difference whether the title claimed by plaintiff is one that the state had acquired by forfeiture, or one that had never left the state; section 3, Art. XIII, applies in either case; it includes "waste and unappropriated," as well as forfeited, lands; and it requires proof of payment of taxes, as an element of title, by any one of the three classes of persons to whom this "constitutional grant" is given. Without payment of taxes title does not leave the state, and therefore can not vest in the claimant.

If the statute of limitations does not run *against* the state, it necessarily follows that it does not run *in favor of* the claimant until the state has parted with its title. The first point of the syllabus in *Hall* v. *Webb,* 21 W. Va. 318, is as follows: "The statute of limitations does not commence to run in favor of an occupant of land, while the title thereto is vested in the State. But the statute does commence to run in favor of such occupant against the grantee of the State from the date of the grant of

67 W. Va.

the land so occupied." · This doctrine was also announced in *Adams* v. *Alkire,* 20 W. Va. 580; *Levasser* v. *Washburne,* 11 Grat. 572. I do not deny that, under certain circumstances, possession for the statutory period will not only defeat a recovery in ejectment, but will also operate to invest the party in possession 'with the legal title upon which he can recover in ejectment if he should thereafter be ousted. But this is true only when it is shown, either that the state had parted with its title to the land in question, or that the parties claim from a common source, or that defendant is an unlawful trespasser. Because, the state being the real owner of the land all the time the claimant is in possession, and the statute of limitations not running against the State, it is not disseized by the possession of the claimant. As long as the state holds the title there can be no *adverse* possession, because there is no one against whom it can run. Consequently such possession counts nothing *in favor* of the claimant; until the state has parted with its title, the claimant is no more than a "squatter."

An examination of our decisions will show that, in those cases 'wherein a plaintiff has been permitted to recover upon a possessory title, without proof of payment of taxes, it appeared, either that the state had parted with its title to the land in controversy, or that the parties claimed title from a common source, in which latter event the defendant was estopped to deny plaintiff's title, for by denying plaintiff's title he would be denying his own.

It is admitted that defendant could have defeated plaintiff's action by proving that the land had been omitted from the land books and had not been taxed for five successive years. But why the necessity of proving this, when it does not appear that the state had ever parted with its title? Such defense is only necessary to show a *forfeiture* of plaintiff's title to the state, and how can there be a forfeiture of a title never acquired? To hold that it is necessary for defendant to establish, as a defense, that plaintiff's title has been forfeited to the state, before plaintiff has proved that the state had parted with the title, is a contradiction in terms.

The well established rule of law, subject to the exceptions above pointed out, prevailing in this state and in Virginia, which requires plaintiff to prove a good and sufficient title and a right

to the possession, before he can recover in ejectment, I understand to mean this, that he must prove a title in himself *prima facie* good as against the state; not necessarily that it is absolutely good at the time of his action, for there may have been a forfeiture; and if he proves that his title is *prima facie* good as against the state, he can recover, unless the defendant proves a better title, either in himself, or outstanding in another person, or that plaintiff's title has returned to the state by forfeiture. This is necessarily true, bcause the state is the fountain of title.

I do not suppose any one will contend that, if the state had instituted proceedings to sell the land in controversy, as school land, it would not have been necessary for Riffle to prove payment of taxes in order to defeat the state. By what rule of practice then is he required to prove more in one instance as defendant, in order to show title against the state, than in the other, as plaintiff, to show title against this defendant? In such a proceeding by the state, if he failed to prove payment of taxes, he would not have so much as a right to redeem, because the land had never been his, and there could be no redemption of a thing never owned. The state could sell the land and would be entitled to all the proceeds, and the purchaser would become entitled of the land. If the claimant is not entitled of the land in the one case, how can it be reasonably said that he is entitled in the other? If it is necessary to pay taxes in order to get a title to the land, it would certainly seem to follow that it is necessary to prove payment of taxes in order to establish title.

The majority of the Court are of opinion that proof that the state had parted with its title is dispensed with, by a presumption that the state had granted the land, arising from lapse of time. I think this view is erroneous for two reasons: (1) it would reverse the rule of practice in this state, which requires plaintiff to prove title; (2) it assumes that possession under color, or claim, of title, is *adversary* possession, whereas, as I have endeavored to show that, agreeable to the repeated decisions of this Court, and of the courts of Virginia, possession, however long continued, can not be *adversary* possession, either *in favor* of the claimant, or against the state unless, and until, the state has parted with its title; therefore, it becomes necessary to prove that the state has parted with its title in order to mark

the beginning of the *adversary* possession. If possession is not adversary to the true owner it is not adversary possession at all; this is axiomatic.

But, whatever may be the law in other jurisdictions concerning the presumption of a state grant in favor of one who has had possession of land for a long period of time, such law has no application in our jurisprudence in favor of a plaintiff in ejectment, for the following reasons, viz: (1) The burden of proof is on plaintiff to *prove* his title; no material fact essential to prove it can be presumed. (2) A material fact will not generally be presumed which can be easily proved. (3) The law requires the best evidence, when it can be had. (4) A fact will not be presumed in favor of a party who is in possession of other facts which are better evidence of his claim, and which, if proved, would render the presumption unnecessary.

Now, applying these principles to the present case, the title to the land was the matter in question; it was not necessary to presume a grant in order to support plaintiff's title, because it would, at most, have shown him to have a title, only *prima facie* good; it was easy for plaintiff to prove payment of taxes, if he had in fact paid them; this was a matter within his own knowledge, and if he had proved payment of taxes it would have rendered the *presumption* of a grant unnecessary and, at the same time, would have established in plaintiff an indefeasible title under section 3, Art. XIII of the Constitution. On the other hand, if plaintiff did not in fact pay the taxes for five years, the land was not his, the title was not in him, and he should not recover it. Again, if it be proper to presume a material fact to make out plaintiff's title, why not presume that he paid the taxes, that a man who owed to his state this duty had discharged it? This presumption would seem to me to be just as reasonable as the other, and quite as good law, if it had not been heretofore decided by this court that, "there is no presumption of payment of taxes arising simply from the duty of payment." *State* v. *Jackson,* 56 W. Va. 560.

All of the West Virginia cases which appear to hold that possession of land under color, or claim, of title for a period of ten years, will vest title in the claimant upon which he may recover in ejectment, are easily to be distinguished from *Witten* v. *St. Clair, supra,* and from the case now before us; they do not

conflict.   To verify this statement see the following cases: *Camden* v. *Lumber Co.,* 59 W. Va. 148; *Parkersburg Industrial Co.* v. *Schultz,* 43 W. Va. 470; *Garrett* v. *Ramsey,* 26 W. Va. 345; *Adkins* v. *Spurlock,* 46 W. Va. 139.   Point 3 of the syllabus in the case last cited reads as follows: "The bar of the statute of limitations not only defeats the remedy, but divests the title, and confers it upon the adverse holder." This I do not deny; provided, however, the state is not the holder of the title.   But if the state is the owner of the title then the possession is not *adverse.*   If the state had the only title, there would be no title which could be transferred from one claimant to the other.   In that case there was a grant from the commonwealth.   The doctrine announced in *Witten* v. *St. Clair,* is again recognized as the law in *Coal Co.* v. *Howell,* 36 W. Va. 489, the seventh point in the syllabus of which is: "To show payment of taxes is not a *sine qua non* to plaintiff's right to recover, unless such payment is one of the elements of his title." By implication this says, that if payment of taxes is an element of title, proof of payment is necessary to prove title.   In the case now before us payment of taxes by Riffle is an element of his title.

In the case of *Archer* v. *Saddler,* 2 H. & M. 371, wherein Judge Tucker uses the language quoted by Judge ROBINSON in support of the doctrine of presuming that a state grant has issued, that distinguished jurist, at the beginning of the same opinion, uses the following language, viz: "The principal questions in this case are: 1. Whether upwards of sixty years peaceable and uninterrupted possession in the caveator, and those under whom he claims, *together with payment of quit rents antecedent to the revolution, and of taxes since that period,* afford a sufficient ground to presume a grant from the crown, for the lands in question."   (The italics are mine).   What would have been the opinion of that eminent judge, as to presuming a grant in favor of a claimant who had paid no quit-rents or taxes?   We can only guess.   Furthermore, his opinion shows that such a rule as a presumption of grant was not then established, but that it was likely to become necessary in consequence of the operation of the law of descent, and that such rule, if ever established, would be born of necessity.   But what would have been Judge Tucker's view concerning the "necessity" of

such a presumption, if the organic law of Virginia had been, at the time he wrote, the same as section 3, Art. XIII of the Constitution of West Virginia? .Again, we can only guess. How much easier it is in West Virginia, at this time, to prove a good possessory title under the Constitution than it was ever before to prove title by grant! Proof of possession for 10, and of payment of taxes for 5 years, makes an indefeasible title. As Judge BRANNON appropriately expresses it in *State* v. *Jackson, supra,* such proof establishes a "constitutional grant," to which I may add, *good against all the world.* The opinion by Marshall, C. J., in *Alexander* v. *Pendleton,* 8 Cranch 462, quoted as authority by Judge ROBINSON, was rendered in a suit in equity to quiet title, and in that case a grant from the commonwealth was shown. *Ricards* v. *Williams,* 7 Wheat. 110, from which Justice Story is quoted, was a case from Connecticut. Furthermore, our laws in relation to land titles, and our rules of practice in regard to what is to be proven in order to establish title in actions of ejectment are reasonable and equitable, and they are too well established by modern adjudications of our own Court and of the court of Virginia, to justify their overthrow by the introduction of different laws and rules gleaned from other jurisdictions whose laws upon the subject may be unlike our own in many respects.

If plaintiff has not, in fact, paid taxes on the land for which he sues, it would be against the policy of the organic law.to permit him to recover it; if he has, in fact, paid his taxes he is invested with an indefeasible title, and being able easily to prove whether or not he has paid taxes, I can see no reason in law for presuming that he had obtained a grant. I have always understood that the law gave the defendant in ejectment the benefit of a presumption that he was entitled to his possession at least, and burdened the plaintiff with proving title. This Court went even further than this, and held that the defendant in possession was presumed to be the owner, in the case of *Teass* v. *City of St. Albans,* 38 W. Va. 1, cited by Judge ROBINSON in the majority opinion. This burden of proving title can not, in my opinion, be relieved by presuming any fact essential to show title. It was to invest persons with good title to land who are in this plaintiff's situation and who paid taxes, and thus to quiet titles, protect actual settlers and en-

courage the state's development that section 3, Art. XIII, was inserted in the Constitution. But it was certainly not the policy to invest such an one with title who did not pay taxes.

I would reverse the judgment of the lower court for failure of plaintiff to prove title.